UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-07556-RGK-SHK | Date: | May 24, 2023 |
| Title: | *GoTV Streaming, LLC v. Netflix, Inc.* | | |

Present: The Honorable   Shashi H. Kewalramani, United States Magistrate Judge

| D. Castellanos | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings (IN CHAMBERS):   ORDER DENYING DEFENDANT NETFLIX INC.'S MOTION TO COMPEL PLAINTIFF'S THIRD PARTY FUNDING RELATED DOCUMENTS [ECF No. 100]**

On May 8, 2023, Defendant Netflix, Inc. ("Defendant" or "Netflix") requested an informal discovery hearing regarding third-party funder related documents and information Defendant was seeking from Plaintiff GoTV Streaming, LLC ("Plaintiff" or "GoTV"). Electronic Case Filing Number ("ECF No.") 94.  On May 9, 2023, the Court held an informal hearing and set a briefing schedule on the matter, as GoTV indicated that the documents and information at issue involved the disclosure of material protected from disclosure by the attorney work product doctrine (the "AWP").  See ECF No. 94, Minute Order; ECF No. 99, Order re: Informal Discovery Dispute.  Defendant filed its Motion to Compel Funding Information ("Motion to Compel" or "MTC"), ECF No. 100, on May 11, 2023; Plaintiff filed its Opposition to the MTC ("Opposition" or "Opp'n"), ECF No. 101, on May 16, 2023; and Defendant filed its Reply in Further Support of MTC ("Reply"), ECF No. 104, on May 18, 2023.  The Court held a hearing on May 19, 2023, see ECF No. 105, and the matter stands ready for decision.

After reviewing the parties' arguments, for the reasons set forth in this Order, the Court **DENIES** Netflix's MTC.

## I.     BACKGROUND

### A.     Procedural History

On October 17, 2022, GoTV filed a complaint ("Complaint"), ECF No. 1, which was served on Netflix on October 25, 2022, see ECF No. 21.  On November 10, 2022, GoTV filed a

First Amended Complaint ("FAC"), asserting patent infringement claims against Netflix. ECF No. 30, FAC. On December 28, 2022, Netflix filed an Answer to GoTV's First Amended Complaint and Counterclaims ("Answer and Counterclaims"). ECF No. 48. On January 23, 2023, GoTV filed an Answer to Netflix's Counterclaims ("Answer to Counterclaims"), denying Netflix's counterclaims. ECF No. 53. On March 14, 2023, Netflix filed its Answer to Plaintiff's FAC and First Amended Counterclaims ("Answer and First Amended Counterclaims"), denying GoTV's patent infringement claims, asserting affirmative defenses, and bringing counterclaims against GoTV. ECF No. 71. On March 23, 2023, GoTV filed an Answer to Netflix's First Amended Counterclaims ("Answer to First Amended Counterclaims"). ECF No. 73.

On December 27, 2022, Netflix filed a Notice of Motion and Motion to Dismiss Induced Infringement Claims ("Motion to Dismiss" or "MTD"). ECF No. 44. On January 9, 2023, GoTV filed a Memorandum of Points and Authorities in Opposition to Netflix's Motion to Dismiss ("Opposition to MTD"), and on January 13, 2023, Netflix filed a Reply in Support of Its Motion to Dismiss ("Reply ISO MTD"). ECF Nos. 49-50. On February 16, 2023, the Court entered an Order Granting the Motion to Dismiss ("Order re MTD"), which dismissed GoTV's induced infringement claims on the grounds that GoTV failed to allege that Netflix had pre-suit knowledge of the patents-in-suit. ECF No. 64, Order re MTD at 4-5.

On February 6, 2023, the parties entered a Joint Report Rule 26(f) Discovery Plan ("Joint Report") proposing, inter alia, September 21, 2023 as the substantial completion of document production deadline and October 19, 2023 as the close of fact discovery deadline. ECF No. 55, Joint Report. On February 14, 2023, the Court entered an Order for Jury Trial ("Jury Trial Order"), setting October 2, 2023 as the pretrial conference date and October 17, 2023 as the jury trial date. ECF No. 62, Jury Trial Order. The same day, the Court referred the case to private mediation and ordered that such mediation be completed by August 18, 2023. ECF No. 63.

On March 10, 2023, the parties entered a Joint Stipulation for Protective Order, ECF No. 66, and on March 13, 2023, the Court entered a Stipulated Protective Order ("Protective Order"), ECF No. 67, Protective Order. On March 30 2023, the parties entered a Joint Stipulation for Discovery as to Deadlines. ECF No. 75. The same day, the Court entered an Order re Joint Stipulation Regarding Discovery Deadlines, setting, inter alia, May 30, 2023 as the close of fact discovery and July 19, 2023 as the close of expert discovery. ECF No. 76.

Prior to the argument regarding this discovery issue, the parties provided the Court a copy of the privilege log that was produced after Netflix submitted its briefing in this matter and, following the hearing, Plaintiff provided the withheld documents to allow the Court to conduct an in camera review.

### B.     The Disputed Discovery

At issue are several Requests for Production ("RFPs") and Interrogatories (collectively, the "Discovery Requests") propounded by Netflix that seek discovery regarding the litigation funding that GoTV received in conjunction with this case. Specifically, Netflix's Interrogatory

Nos. 5 and 7 and RFP Nos. 9 and 10 and GoTV's responses are set out below. ECF No. 100, MTC at 2.

**Interrogatory No. 5:**

Describe, in complete detail, all ownership and other financial interest in any of the Patents-in-Suit or the outcome of this litigation, including, for each such interest, the nature of such ownership or interest, including the date of any sale or assignment, the identities of the parties to any sale or assignment, the identities of all entities and/or individuals with ownership interests at any time, in whole or in part, of any of the Patents-in-Suit or the outcome of this litigation, any consideration exchanged for an ownership interest to any of the Patents-in-Suit or the outcome of this litigation, any agreements or consideration made, provided, or promised in exchange for funding for the litigation, and all documents memorializing or describing such sales, agreements or assignments.

**Response:**

In addition to Plaintiff's Objections to Definitions and Instructions, which are incorporated herein, including Plaintiff's objections to the definition of the term "Document" and Plaintiff's objection to the Defendant's instruction regarding the identification of documents, Plaintiff objects to this Interrogatory to the extent it seeks information that is not in Plaintiff's possession, custody, or control, including Plaintiff's current knowledge of same, or that Plaintiff does not keep in its regular course of business. Plaintiff objects to this Interrogatory to the extent it would require the disclosure of information that is confidential to a third party. Plaintiff objects to this Interrogatory to the extent it improperly seeks to require Plaintiff to marshal all available proof and limit the evidence that Plaintiff may present at trial or in any other proceeding in this lawsuit. Plaintiff objects to this Interrogatory as compound and unduly burdensome, and in violation of Federal Rule 33 and the Parties' Rule 26(f) agreement, which limit the number of interrogatories to the extent it contains discrete subparts that each count separately toward the total number of Defendant's interrogatories. Plaintiff objects to this Interrogatory to the extent it would seek information that is protected by the attorney-client privilege, the work-product doctrine, common interest privilege, or is otherwise immune from discovery. Plaintiff objects to this Interrogatory to the extent it seeks information subject to third-party confidentiality obligations. Plaintiff objects to this Interrogatory to the extent it seeks the disclosure and circumstances of any interests in the outcome of this litigation and/or the funding for the litigation, as irrelevant, unduly burdensome, not proportional to the needs of the case and protected by aforementioned privileges. Plaintiff objects to this Interrogatory to the extent it seeks information that is within Defendant's possession, custody, or control; or information that is available to Defendant from other source, including publicly available sources, with equal or less burden from Plaintiff. Plaintiff objects to this Interrogatory to the extent that it seeks the

identification of "all documents" as unduly burdensome, not proportional to the needs of the case, and to the extent it would seek to circumvent the Parties' Rule 26(f) agreement with respect to e-discovery.

Subject to and without waiving the foregoing objections, as presently advised and to the extent Plaintiff understands this Interrogatory, Plaintiff answers as follows:

Pursuant to Federal Rule 33(d), Plaintiff identifies the following documents from which the answer to this interrogatory can be ascertained by Defendant:

U.S. Patent No. 8,103,865 (GTV00000001); U.S. Patent No. 8,478,245 (GTV00000633); U.S. Patent No. 8,989,715 (GTV00001440); U.S. Patent No. 8,103,865 Certified File History (GTV00000024); U.S. Patent No. 8,478,245 Certified File History (GTV00000656); U.S. Patent No. 8,989,715 Certified File History (GTV00001462);

For the '865 Patent, Assignment from inventors (Pierre Carion & Kevin Smith) to Hands-On Mobile executed on July 25, 2007 [Recorded with USPTO at Reel/Frame 019695/0102 on August 1, 2007] (GTV00001732); Assignment from Hands-On Mobile to GoTV Networks, Inc. executed on April 26, 2010 [Recorded with USPTO at Reel/Frame: 024306/0841 on April 29, 2010] (GTV00001742); Agreement and Plan of Merger - GoTV Networks, Inc., Phunware, Inc., Speed Merger Sub, Inc. and GoTV Investment Fund (C-7), LLC, a Shareholder Representative executed on July 2, 2011 [A portion of the entire document recorded with USPTO at Reel/Frame: 056946/0302 on July 22, 2021] (GTV00001817); Security interest assigned from Phunware, Inc. to Bridge Bank, National Association executed on December 21, 2012 [Recorded with USPTO at Reel/Frame: 029621/0751 on January 14, 2013] (GTV00001764); USPTO Notice of Recordation of Bridge Bank Release of Security Interest, date February 4, 2022 (GTV00001800); Release of security interest by Western Alliance Bank (successor to Bridge Bank National Association) executed on January 19, 2022 [Recorded with USPTO at Reel/Frame: 058898/0655 on February 4, 2022] (GTV00001798); Patent Sale Agreement between Phunware, Inc. and GoTV Streaming LLC executed on May 3, 2022; Assignment of '865, '245, and '715 patents from GoTV Networks to GoTV Streaming executed on June 27, 2022 (GTV00001801); Release of security interest by Western Alliance Bank (successor to Bridge Bank National Association) executed on June 29, 2002 (GTV00001805); USPTO Notice of Recordation of Release of Security Interest, dated October 17, 2022 (GTV00001815); Release of security interest by Western Alliance Bank (successor to Bridge Bank National Association) executed on August 23, 2022 [Recorded with the USPTO at Reel/Frame: 061429/0457 on October 14, 2022] (GTV00001806); USPTO Notice of Recordation of Patent Assignment, dated October 17, 2022 (GTV00001813); and Assignment from Phunware, Inc. and GoTV Networks, Inc. to GoTV Streaming, LLC executed on August 29, 2022 [Recorded with the USPTO at Reel/Frame 061429/0541 on October 14, 2022] (GTV00001808; GTV00001811);

   For the '245 Patent, Assignment from inventors (Pierre Carion & Kevin Smith) to Hands-On Mobile executed on July 25, 2007 [Recorded with USPTO at Reel/Frame 019707/0233 on August 1, 2007] (GTV00001729); Assignment from Hands-On Mobile to GoTV Networks, Inc. executed on April 26, 2010 [Recorder with USPTO at Reel/Frame: 024306/0841 on April 29, 2010] (GTV0001736); Agreement and Plan of Merger - GoTV Networks, Inc., Phunware, Inc., Speed Merger Sub, Inc. and GoTV Investment Fund (C-7), LLC, a Shareholder Representative executed on July 2, 2011 [A portion of the entire document recorded with USPTO at Reel/Frame: 056946/0302 on July 22, 2021] (GTV00001817); Security interest assigned from Phunware, Inc. to Bridge Bank, National Association executed on December 21, 2012 [Recorded with USPTO at Reel/Frame: 031646/0299 on November 15, 2013] (GTV00001748); Security interest assigned from Phunware, Inc. to Western Alliance Bank executed on March 25, 2016 [Recorded with USPTO at Reel/Frame: 038194/0001 on April 5, 2016] (GTV00001774); USPTO Notice of Recordation of Bridge Bank Release of Security Interest, date April 1, 2021 (GTV00001794); Release of security interest by Bridge Bank National Association back to Phunware, Inc. executed on March 26, 2021 [Recorded with USPTO at Reel/Frame: 055787/0418 on March 31, 2021] (GTV00001784); USPTO Notice of Recordation of Western Alliance Release of Security Interest, date April 1, 2021 (GTV00001796); Release of security interest by Western Alliance Bank back to Phunware, Inc. executed on March 26, 2021 [Recorded with USPTO at Reel/Frame: 055787/0035 on March 31. 2021] (GTV00001789); Patent Sale Agreement between Phunware, Inc. and GoTV Streaming LLC executed on May 3, 2022; Assignment of '865, '245, and '715 patents from GoTV Networks to GoTV Streaming executed on June 27, 2022 (GTV00001801); Release of security interest by Western Alliance Bank (successor to Bridge Bank National Association) executed on June 29, 2002 (GTV00001805); USPTO Notice of Recordation of Release of Security Interest, dated October 17, 2022 (GTV00001815); Release of security interest by Western Alliance Bank (successor to Bridge Bank National Association) executed on August 23, 2022 [Recorded with the USPTO at Reel/Frame: 061429/0457 on October 14, 2022] (GTV00001806); USPTO Notice of Recordation of Patent Assignment, dated October 17, 2022 (GTV00001813); and Assignment from Phunware, Inc. and GoTV Networks, Inc. to GoTV Streaming, LLC executed on August 29, 2022 [Recorded with the USPTO at Reel/Frame 061429/0541 on October 14, 2022] (GTV00001808; GTV00001811);

   For the '715 Patent, Assignment from inventors (Pierre Carion & Kevin Smith) to Hands-On Mobile executed on July 25, 2007 [Recorded with USPTO with respect to the related '245 Patent at Reel/Frame 019707/0233 on August 1, 2007] (GTV00001729); Assignment from Hands-On Mobile to GoTV Networks, Inc. executed on April 26, 2010 [Recorder with USPTO with respect to the related '245 Patent at Reel/Frame: 024306/0841 on April 29, 2010] (GTV00001736); Agreement and Plan of Merger - GoTV Networks, Inc., Phunware, Inc., Speed Merger Sub, Inc. and GoTV Investment Fund (C-7), LLC, a Shareholder Representative executed on July 2, 2011 [A portion of the entire document

recorded with USPTO at Reel/Frame: 056946/0302 on July 22, 2021] (GTV00001817); Security interest assigned from Phunware, Inc. to Bridge Bank, National Association executed on December 21, 2012 [Recorded with USPTO at Reel/Frame 034933/0298 on February 10, 2015] (GTV00001756); Assignment from GoTV Networks, Inc. to Phunware, Inc. executed on October 13, 2014 [Recorded with USPTO at Reel/Frame: 033938/0956 on October 13, 2014] (GTV00001772); Security interest assigned from Phunware, Inc. to Western Alliance Bank executed on March 25, 2016 [Recorded with USPTO at Reel/Frame: 038194/0001 on April 5, 2016] (GTV00001774); USPTO Notice of Recordation of Bridge Bank Release of Security Interest, date April 1, 2021 (GTV00001794); Release of security interest by Bridge Bank National Association back to Phunware, Inc. executed on March 26, 2021 [Recorded with USPTO at Reel/Frame: 055787/0418 on March 31, 2021] (GTV00001784); USPTO Notice of Recordation of Western Alliance Release of Security Interest, date April 1, 2021 (GTV00001796); Release of security interest by Western Alliance Bank back to Phunware, Inc. executed on March 26, 2021 [Recorded with USPTO at Reel/Frame: 055787/0035 on March 31, 2021] (GTV00001789); Patent Sale Agreement between Phunware, Inc. and GoTV Streaming LLC executed on May 3, 2022; Assignment of '865, '245, and '715 patents from GoTV Networks to GoTV Streaming executed on June 27, 2022 (GTV00001801); USPTO Notice of Recordation of Release of Security Interest, dated October 17, 2022 (GTV00001815); Release of security interest by Western Alliance Bank (successor to Bridge Bank National Association) executed on August 23, 2022 [Recorded with the USPTO at Reel/Frame: 061429/0457 on October 14, 2022] (GTV00001806); USPTO Notice of Recordation of Patent Assignment, dated October 17, 2022 (GTV00001813); and Assignment from Phunware, Inc. and GoTV Networks, Inc. to GoTV Streaming, LLC executed on August 29, 2022 [Recorded with the USPTO at Reel/Frame 061429/0541 on October 14, 2022] (GTV00001808; GTV00001811);

  GoTV Streaming, LLC's Articles of Organization with Statement of Conversion CA Limited Liability Company, dated June 3, 2022 (GTV00001827); Printout of California's Secretary of State regarding GoTV Streaming, LLC (GTV00001828); Printout of Delaware's Secretary of State regarding GoTV Streaming, LLC (GTV00001831).

  Plaintiff further directs Defendant to its Initial Disclosures, served on February 6, 2023, and any amendments thereto, which are incorporated herein by reference for all purposes.

  Plaintiff further responds that additional information subject to confidentiality obligations or otherwise confidential to Plaintiff will be provided in an amended and/or supplemental response after entry of a suitable protective order in this case.

  Plaintiff's investigation is ongoing, and Plaintiff reserves the right to amend or supplement this response to provide additional information in accordance with the obligations under the Federal Rules, the Local Rules of this Court, any orders this Court enters in this case, and any agreement of the parties.

**First Supplemental Response to Interrogatory No. 5 (3/17/2023):**

Plaintiff incorporates by reference its objections and responses to this Interrogatory above. Plaintiff further identifies, by Bates number, the previously-identified Patent Sale Agreement between Phunware, Inc. and GoTV Streaming LLC executed on May 3, 2022 (GTV00001919) and Agreement and Plan of Merger - GoTV Networks, Inc., Phunware, Inc., Speed Merger Sub, Inc. and GoTV Investment Fund (C-7), LLC, as Shareholder Representative executed on July 2, 2011 (GTV00001832).

**Second Supplemental Response to Interrogatory No. 5 (3/27/2023):**

Plaintiff incorporates by reference its objections and responses to this Interrogatory above. Plaintiff further states that Plaintiff has arranged for third party litigation funding for this lawsuit. Plaintiff reiterates its stated objections that the disclosure and circumstance of the funding for the litigation are, inter alia, irrelevant and protected from disclosure by the aforementioned privileges, including work product. To the extent that Netflix claims that further discovery regarding third party litigation funding is relevant to a standing defense (which has not been pled), Plaintiff is willing to provide the underlying funding agreement to the Magistrate Judge for an *in camera* review to evaluate the agreement in view of that contention.

**Third Supplemental Response to Interrogatory No. 5 (05/16/2023):**

Plaintiff incorporates by reference its objections and responses to this Interrogatory above. Plaintiff further states that Plaintiff has arranged for third party litigation funding for this lawsuit from Burford Capital, Ltd., which is being provided through affiliates Adkins Investments LLC and Milwaukee Investments LP.

ECF No. 101-1, Exh. 1 to Opp'n at 3-10.

**Interrogatory No. 7:**

For each Patent-in-Suit, describe in detail each valuation (including, but not limited to, monetary valuation) of the patent performed for any purpose including the identity of each person performing the valuation; the identity of each person requesting or requiring performance of the valuation; the date or dates on which the valuation was performed; the date as of which the valuation was performed; the purpose for which the valuation was performed; and the results, conclusions, findings, or other information produced by the valuation exercise.

**Response:**

In addition to Plaintiff's Objections to Definitions and Instructions, which are incorporated herein, Plaintiff object so this interrogatory as vague and ambiguous, as the term "valuation" is undefined. Plaintiff objects to this Interrogatory to the extent it seeks information that is not in Plaintiff's possession, custody, or control, including Plaintiff's current knowledge of same, or that Plaintiff does not keep in its regular course of business. Plaintiff objects to this Interrogatory to the extent it seeks information that is within Defendant's possession, custody, or control; or information that is available to Defendant from other source, including publicly available sources, with equal or less burden from Plaintiff. Plaintiff objects to this Interrogatory as compound and unduly burdensome, and in violation of Federal Rule 33 and the Parties' Rule 26(f) agreement, which limit the number of interrogatories to the extent it contains discrete subparts that each count separately toward the total number of Defendant's interrogatories. Plaintiff objects to this Interrogatory to the extent it would seek information that is protected by the attorney-client privilege, the work- product doctrine, common interest privilege, or is otherwise immune from discovery. Plaintiff objects to this Interrogatory as premature to the extent that it seeks expert testimony, which will be provided at a time specified by, and otherwise in accordance with, the Federal Rules, the Local Rules of this Court, any orders this Court enters in this case, and any agreement of the parties. Plaintiff objects to this Interrogatory to the extent it seeks legal argument or legal conclusions.

Subject to and without waiving the foregoing objections, as presently advised and to the extent Plaintiff understands this Interrogatory, Plaintiff answers as follows:

Plaintiff is unaware of any valuation(s) performed for any of the Patents-in-Suit. Plaintiff's investigation is ongoing, and Plaintiff reserves the right to amend or supplement this response to provide additional information in accordance with the obligations under the Federal Rules, the Local Rules of this Court, any orders this Court enters in this case, and any agreement of the parties.

**First Supplemental Response to Interrogatory No. 7 (04/17/2023):**

Plaintiff incorporates by reference its objections and responses to this Interrogatory above. Plaintiff further states:

Plaintiff is not aware of any valuations of any of the Patents-in-Suit that were performed in connection with litigation funding received with respect to the current litigation.

ECF No. 100-7, Exh. G to MTC at 28-30.

**Request for Production No. 9:**

Documents related to the circumstances and nature of any ownership, acquisition, assignment, transfer of ownership, license, security interest, or other financial interest, relating to any of the Patents-in-Suit or the outcome of this litigation, including Documents sufficient to show the identity of each Person involved in the transfer of such interest, and to describe each Person's involvement in such transfer, and all agreements reflecting or otherwise relating to such transfer.

**Response:**

In addition to Plaintiff's Objections to Definitions and Instructions, which are incorporated herein, including Plaintiff's objections to the definition of the term "Document," Plaintiff objects to the Request to the extent it would include attorney engagement agreements, litigation funding agreements and similar agreements that are not relevant to any party's claims or defenses and not proportional to the needs of the case. Any such Documents are not within the scope of Rule 26 and will not be produced. Plaintiff objects to this Request as overly broad and unduly burdensome, to the extent it purports to seek information from any person or entity that is not the Plaintiff GoTV Streaming, LLC and/or to the extent it purports to otherwise seek documents or information not within Plaintiff's possession, custody, or control, including Plaintiff's current knowledge of same. To the extent Plaintiff responds, it does so on behalf of itself only. Plaintiff further objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, common interest privilege, or is otherwise immune from discovery, including to the extent it seeks information from the internal work-product files of ALAVI & ANAIPAKOS PLLC and/or other attorneys representing or advising Plaintiff. Plaintiff is presently withholding Documents based on privilege.
Subject to and without waiving the foregoing objections, and based upon a reasonable search, Plaintiff will produce responsive, relevant, non-privileged documents in its possession.

**Request for Production No. 10:**

Documents sufficient to identify any Person with a financial interest in or to any of the Patents-in-Suit or the outcome of this litigation, as well as the nature of such financial interest.

**Response:**

In addition to Plaintiff's Objections to Definitions and Instructions, which are incorporated herein, including Plaintiff's objections to the definition of the term "Document," Plaintiff objects to the Request to the extent it would include

attorney engagement agreements, litigation funding agreements and similar agreements that are not relevant to any party's claims or defenses and not proportional to the needs of the case. Any such Documents are not within the scope of Rule 26 and will not be produced. Plaintiff objects to this Request as overly broad and unduly burdensome, to the extent it purports to seek information from any person or entity that is not the Plaintiff GoTV Streaming, LLC and/or to the extent it purports to otherwise seek documents or information not within Plaintiff's possession, custody, or control, including Plaintiff's current knowledge of same. To the extent Plaintiff responds, it does so on behalf of itself only. Plaintiff further objects to this Request as seeking information that is protected by the attorney-client privilege, the work-product doctrine, common interest privilege, or that is otherwise immune from discovery, including to the extent it seeks information from the internal work-product files of ALAVI & ANAIPAKOS PLLC and/or other attorneys representing or advising Plaintiff. Plaintiff is presently withholding Documents based on privilege.

      Subject to and without waiving the foregoing objections, and based upon a reasonable search, Plaintiff will produce responsive, relevant, non-privileged documents in its possession.

ECF No. 100-6, Exh. F to MTC at 17-19.

### C. The Parties' Arguments

#### 1. Netflix's Arguments

In its Motion to Compel, Netflix first argues that information related to litigation funding is relevant to determine standing, and "would meaningfully affect Netflix's litigation tactics and the terms of any possible resolution." ECF No. 100, MTC at 2. Netflix further argues that this information is relevant to reach a settlement agreement and to address any "potential conflict issues." Id. The failure to disclose this information also amounts to "flaunting the very purpose of Local Rule [("L.R.")] 7.1-1" and "could give rise to standing issues, which Netflix is entitled to investigate, and to raise at any point in litigation pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3)." Id. (citing Gamon Plus, Inc. v. Campbell Soup Co., No. 15-CV-08940, 2022 WL 1828432, at *2 (N.D. Ill. May 26, 2022) for the proposition that such litigation funding agreements are relevant to standing).

Netflix then argues that this information is relevant because it may be utilized to refute any "David versus Goliath" argument at trial, could shed light on the value of the patents at issue, and could reveal the bias of witnesses who may benefit from this litigation. Id. at 3 (citing Continental Circuits LLC v. Intel Corp, 435 F. Supp. 3d 1014, 1019 (D. Ariz. 2020) and Impact Engine, Inc. v. Google LLC, No. 19-cv-1301, Dkt. No. 101 (S.D. Cal. Aug. 12, 2020)). Further, this information may be highly relevant to damages because it may reveal "the financier's valuation of the patents-in-suit . . . ." Id. (citing Continental Circuits, 435 F. Supp. 3d at 1019; Gamon Plus, 2022 WL 18284329, at *2; Odyssey Wireless, Inc. v. Samsung Elecs. Co., No. 15-cv-01735, 2016 WL 7665898, at *7 (S.D. Cal. Sept. 20, 2016)).

As to privilege, Netflix argues that the information contained in the litigation funding documents is not privileged, and as of the filing of the MTC, GoTV had not provided a privilege log identifying the documents, which amounted to a waiver of any privilege or protection under the AWP. Id. at 3. With respect to the assertion of the attorney-client privilege, Netflix argues that it only seeks the "who, what, when, where, and how of [GoTV's] litigation funding arrangements," which are not privileged. Id. at 4 (citing Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC, No. 18-cv-2185, 2020 WL 7490107, at *8 (S.D.N.Y. Dec. 18, 2020)). Further, Netflix argues that "'in patent litigation cases, courts have generally ruled that litigation funding agreements and related documents are relevant and discoverable.'" Id. (quoting Taction Tech. Inc. v. Apple Inc., No. 21-cv-00812, 2022 WL 18781396, at *5-8 (S.D. Cal. Mar. 16, 2022)). Netflix states that "[t]he invocation of privilege to cover even the communications and information that pre-dated the existence of the funding agreement itself—when the relevant parties were adverse to each other, negotiating items such [as] the terms of funding, the apportionment of recovery—underscores the impropriety of GoTV['s] . . . privilege claim." Id. at 4 (emphasis in original). Netflix then cites to the United States District Court of New Jersey's Local Rules, as well as a requirement by a Chief Judge in another United States District Court and an order filed with the Federal Circuit, for the proposition that the identity, information related to the place of formation, whether the funder has any say in settlement of the case, and the nature of the financial interest should be disclosed. Id.

Finally, Netflix argues that even if the material is protected by the AWP, which would not cover the identity of the funding entity, it should be produced because the materials may contain relevant valuation information and the information could not be obtained any other way. Id. at 4-5 (citing Odyssey Wireless, 2016 WL 7665898, at *7). Further, it "likely reflects GoTV['s] . . . only objective valuation: other than the Patent Sale Agreement it entered with Phunware, Inc. (its predecessor-in-interest to the asserted patents), GoTV . . . has confirmed in discovery responses that there are no other agreements, such as settlement agreements or patent license agreements, for any of the asserted patents. Thus, there is no other benchmark that GoTV . . . has accepted to inform an appropriate royalty to compensate it for any alleged infringement under 35 U.S.C. § 284." Id. at 5. Netflix cites to Preservation Techs. LLC v. MindGeek USA, Inc., No. 17-cv-08906, 2020 WL 10965161, at *7 (C.D. Cal. Dec. 18, 2020), as being instructive because in that case, the defendant also sought information related to "patent valuations by litigation funding entities," but the request was denied, without prejudice, as the discovery special master found the defendant had other licenses from which the valuation of the patents could be ascertained. Id. Here, there are no such license agreements, and this information is, therefore, appropriately produced. Id.

2. **GoTV's Opposition**

In the Opposition, GoTV argues that the information regarding the litigation funder is irrelevant, and Netflix has not provided a sufficient basis warranting the disclosure of these documents over the assertion of the AWP. ECF No. 101, Opp'n at 1. GoTV further states that in an effort to resolve this dispute, it has disclosed the identity of the litigation funder in its most recent supplemental response to Netflix's Interrogatory No. 5. Id. GoTV offered to provide the

documents for the Court to review in camera to allow the Court to determine whether the documents should be produced. Id. at 1-2.

GoTV first sets out the standard in the Ninth Circuit that documents, including litigation funding documents, created because of litigation are protected by the attorney work product doctrine. Id. (citing Odyssey Wireless, 2016 WL 7665898, at *5; Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l, Inc. No. EDCV 17-1388-AB(KKx), 2018 WL 8193374, at *8 (C.D. Cal. May 14, 2018); and Continental Circuits, 435 F. Supp. 3d at 1020). GoTV also argues that "'failing to identify the funding agreement on its privilege log' did not constitute waiver, as the Ninth Circuit 'has rejected a per se waiver when documents are not identified on a privilege log.'" Id. at 2 (citing Continental Circuits, 435 F. Supp. 3d at 1022).

As for the argument under L.R. 7.1-1, in a footnote, Plaintiff states because this issue was never discussed between the parties, the Court noted that it was outside of the scope of the dispute because the parties had not met and conferred, and the rule does not require this information to be provided, Defendant's argument fails. Id. at 2 n.1. Nevertheless, this basis is moot because Plaintiff has disclosed the name of its funder. Id.

Plaintiff points out that it has now produced a privilege log in the matter and that Netflix's argument based on failure to produce a privilege log is not well taken because "[t]he parties previously agreed to exchange logs only if requested [and] Netflix never requested a log during the meet-and-confer process." Id. at 3 n.4. GoTV then cites to additional authority for the proposition that "funding documents are protected [under the attorney] work product [doctrine]." Id. at 3 (citing Hoist Fitness Sys., 2018 WL 8193374, at *8; Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc., Nos. 16-538, 16-541, 2018 WL 466045, at *5–6 (W.D. Pa. Jan. 18, 2018); United States v. Homeward Residential, Inc., No. 4:12-CV-461, 2016 WL 1031154, at *6 (E.D. Tex. Mar. 15, 2016); Devon IT, Inc. v. IBM Corp., No. 10-2899, 2012 WL 4748160, at *1 n.1 (E.D. Pa. Sept. 27, 2012). Moreover, as noted in Taction Tech., Inc., 2022 WL 18781396, at *7, that court found that the funding agreement and related documents, which were narrowed by the court to only seek valuation related information, were found to qualify as work product and were not ordered to be produced. Id. at 3.

GoTV then argues that no substantial need exists in this case because there are no valuations regarding the patents-in-suit, which the Court may confirm by reviewing the documents in camera. Id. at 3-4. Further, Netflix's argument is based on speculation and "[c]ourts regularly deny unsubstantiated claims of 'substantial need.'" Id. at 3 (citing Continental Circuits LLC, 435 F. Supp. 3d at 1022-23).

With respect to relevance, GoTV argues that this information is not relevant and cites several cases in this regard. Id. at 4 (citing in part MLC Intell. Prop., LLC v. Micron Tech., Inc., No. 14-CV-03657-SI, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019); Allele Biotechnology & Pharm., Inc. v. Pfizer, Inc., 20-CV-01958-H-AGS, 2021 WL 4168175, at *2 (S.D. Cal. Sept. 13, 2021); Nantworks, LLC v. Niantic, Inc., No. 20-cv-06262-LB, 2022 WL 1500011, at *2 (N.D. Cal. May 12, 2022); In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig., 405 F. Supp. 3d 612, 615 (D.N.J. 2019)).

In addition to stating that Netflix forwarded only a speculative basis for these documents, GoTV also argues that there are no standing issues and this area of inquiry seeks information that is not relevant. Id. at 5 (citing in part Colibri Heart Valve LLC v. Medtronic CoreValve LLC, No. 8:20-C-V00847-DOC(JDEx), 2021 WL 10425630, at *3 (C.D. Cal. Mar. 26, 2021)[1]). Moreover, GoTV argues that litigation funding is not relevant to damages because not only were there no valuations contained in the funding documents, but Netflix's assertion in this regard is pure speculation. Id. at 5-6 (citations omitted). The relevance is further questionable because the funding agreement "was executed in 2022 (some ten years after the hypothetical negotiation date), it has no bearing on damages[,]" and other courts have found that they are not relevant to the hypothetical negotiation nor a reasonable settlement value of the case. Id. at 6 (citations omitted).

Finally, GoTV argues that the remaining relevancy arguments raised by Netflix related to potential bias or trial themes are also too speculative to warrant production of materials protected under the AWP. Id.

### 3. Netflix's Reply

In its Reply, Netflix argues that disclosure of the identity of the litigation funder does not resolve the MTC. ECF No. 104, Reply at 1. Netflix also clarifies that its reference to L.R. 7.1-1 did not obligate disclosure of the funder's identity under that local rule, but rather was cited to show that it is "analogous to those parallel rules in other districts which expressly mandate disclosure of litigation funders." Id. at 1 n.1. Netflix then identifies what it believes are gaps in the privilege log and asserts that GoTV should identify how it conducted a search of those documents. Id. at 1-2.

Netflix then argues that the Court should review the documents in camera because a document may contain a valuation of the patents-in-suit, even though it may not use the term "valuation." Id. at 2. Additionally, any such valuations would be relevant because GoTV has not provided documents such as those that were produced in Odyssey Wireless, 2016 WL 7665898, at *7 and Preservation Techs. LLC, 2020 WL 10965161, at *7, such that there is substantial need for the materials, even if they constitute AWP. Id. at 2-3.

## II. DISCUSSION

### A. General Legal Standards Regarding Discovery

Federal Rule of Civil Procedure ("Rule") 26(b)(1) governs the scope of permissible discovery and provides:

---

[1] GoTV cited to the docket number of this case on the Court's ECF system. The Court was able to locate the order and its corresponding Westlaw cite.

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Relevancy, for purposes of discovery, "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Nguyen v. Lotus by Johnny Dung Inc., No. 8:17-cv-01317-JVS-JDE, 2019 WL 3064479, at *1 (C.D. Cal. June 5, 2019) (internal citations and quotation marks omitted). "Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." Duran v. Cisco Sys., Inc., 258 F.R.D. 375, 378 (C.D. Cal. 2009) (internal citations and quotation marks omitted).

Because discovery must be both relevant and proportional, the right to discovery, even plainly relevant discovery, is not limitless. See Fed. R. Civ. P. 26(b)(1); Nguyen, 2019 WL 3064479, at *1. Discovery may be denied where: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). The party opposing discovery then has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Bryant v. Ochoa, No. 07cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009). "The party opposing discovery is 'required to carry a heavy burden of showing' why discovery should be denied." Reece v. Basi, No. 2:11-CV-2712 TLN (AC), 2014 WL 2565986, at *2 (E.D. Cal. June 6, 2014), aff'd, 704 F. App'x 685 (9th Cir. 2017) (quoting Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)).

Finally, "[t]he district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." United States ex rel. Brown v. Celgene Corp., No. CV 10-3165 GHK (SS), 2015 WL 12731923, at *2 (C.D. Cal. July 24, 2015) (internal citations and quotation marks omitted).

/ / /

/ / /

**B.     AWP**

Rule 26(b)(3)(A) codifies the AWP as follows:

Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
    (i) they are otherwise discoverable under Rule 26(b)(1); and
    (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A).

It "is a qualified protection limiting discovery of 'documents and tangible things' prepared by a party or his or her representative in anticipation of litigation or trial." Jones v. Hernandez, 322 F.R.D. 411, 412 (S.D. Cal. 2017) (citing Admiral Ins. Co. v. U.S. Dist. Court for Dist. Of Ariz., 881 F.2d 1486, 1494 (9th Cir. 1989)). The party claiming work product protection bears the burden of establishing that the work product doctrine applies. United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011). "A party may obtain discovery of work product only on a showing of 'substantial need' and an inability to obtain equivalent information from other sources." Hernandez, 322 F.R.D. at 412 (quoting Fed. R. Civ. P. 26(b)(3)(A)(ii)). "Even when a court orders disclosure of work product, 'it must protect against disclosure of the mental impressions, conclusion, opinions, or legal theories of a party's attorney or other representative concerning the litigation.'" Id. (quoting Fed. R. Civ. P. 26(b)(3)(B)). These materials—otherwise known as "opinion" work product—represent the "core types of work product" that the doctrine was designed to protect. Id. (citing Republic of Ecuador v. Mackay, 742 F.3d 860, 870 n.3 (9th Cir. 2014)).

**C.     Analysis**

    1.     Relevance

As the moving party, Netflix has the burden to show that the information sought is relevant to claims or defenses in this case. United States v. McGraw-Hill Cos., No.13-cv-779-DOC(JCGx), 2014 WL 1647385, at *8 (C.D. Cal. Apr. 15, 2014). "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." Duran v. Cisco Sys., Inc., 258 F.R.D. 375, 378 (C.D. Cal. 2009) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir.1975); Sullivan v. Prudential Ins. Co. of Am., 233 F.R.D. 573, 575 (C.D.Cal.2005)).

The Court will address each of Netflix's arguments.

                      a.    Fairness and Identity for Settlement Purposes

First, with respect to Netflix's claim that it deserves to know who it is litigating against, and its citation to 3rd Eye Surveillance, LLC v. U.S., 158 Fed. Cl. 216, 228 (Fed. Cl. 2022), the Court notes that in that case, like this case, the documents were reviewed in camera and were not ordered to be produced, see id.  Though the Court empathizes with Netflix's desire to obtain this information, allowing this to be the standard would require this Court to ignore the controlling limits under Rule 26.  Netflix has not shown how this information relates to a claim or defense.  Similarly, Netflix's second argument that it may complicate "any efforts to reach an amicable settlement of litigation," ECF No. 100, MTC at 2, is not grounded in any legal authority and may only come into play if, and when, the parties are trying to settle the case.  In sum, this basis does not tie into the standard of showing that the discovery relates to a legal claim or defense.

                      b.    Local Rule 7.1-1

Netflix's third argument—that failing to disclose all the funder related information amounts to Plaintiff "flaunting the very purpose of Local Rule 7.1-1 through its inadequate disclosure," id.—is also unavailing.  Though Netflix claims that it was not arguing that failure to disclose the litigation funder was a violation of the local rule, but rather analogizing it to what is done in another District or before another District Judge, see ECF No. 104, Reply at 1 n.1, this does not appear to be what Netflix was arguing in its original MTC, based on the very words in the MTC and its juxtaposition against the rules in the other Districts.

Local Rule 7.1-1, title "Notice of Interested Parties" provides:

> To enable the Court to evaluate possible disqualification or recusal, counsel for all non-governmental parties must file with their first appearance a Notice of Interested Parties, which must list all persons, associations of persons, firms, partnerships, and corporations (including parent corporations, clearly identified as such) that may have a pecuniary interest in the outcome of the case, including any insurance carrier that may be liable in whole or in part (directly or indirectly) for a judgment in the action or for the cost of defense.

The purpose of this rule is "to evaluate possible disqualification or recusal" and does not address the issue of litigation funders for other purposes.  Netflix has not cited, nor has the Court located, any opinion of this Court that addresses litigation funders.

Consequently, this rule is not applicable to the discovery at issue, nor can this Magistrate Judge expand the reading of L.R. 7.1-1 to encompass discovery related to litigation funders in contravention of the legal framework that is required to be applied in this Circuit to address a discovery issue related to litigation funding related information.

/ / /

/ / /

c. Standing

The sum total of Netflix's arguments that the litigation funder related documents are related to standing is as follows: "And the identity of the parties funding this litigation could give rise to standing issues, which Netflix is entitled to investigate, and to raise at any point in litigation pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3)." ECF No. 100, MTC at 2 (citing Gamon Plus, Inc., 2022 WL 18284320, at *2). Though Gamon Plus, Inc., 2022 WL 18284320, at *2 did indicate that litigation funding information may be discoverable for standing purposes, it provides no guidance if standing is not at issue and does not establish what quantum of information is necessary to seek discovery in this regard.

Conversely, as discussed in Colibri Heart Valve LLC v, 2021 WL 10425630, at *3, "skepticism . . . is an improper ground for compelling discovery." (citations omitted); see also Rich v. Kirkland, No. CV 11-4272-JLS (SPx), 2015 WL 7185390, at *2 (C.D. Cal. Nov. 13, 2015) (noting that "[r]equested discovery is not relevant to the subject matter involved in a pending action if the inquiry is only based on the requesting party's mere suspicion or speculation") (citing Micro Motion, Inc. v. Kane Steel Co., Inc., 894 F.2d 1318, 1324 (Fed. Cir. 1990)). Here, Netflix's argument is speculative and Netflix acknowledges as much when it states that "the parties funding this litigation could give rise to standing issues . . . ." ECF No. 100, MTC at 2 (emphasis added). Netflix did not address this argument in its Reply and this gives the Magistrate Judge significant pause.

Moreover, now that GoTV has disclosed the name of the litigation funder, which it probably should have done sooner, and provided "all the assignments of the asserted patents," there does not appear to be any basis for seeking other materials related to the litigation funder. Finally, the Court's review of the documents in camera supports GoTV's argument that the litigation funder has a security interest and GoTV's standing to assert the patents-in-suit is not impacted by the funding agreement.

d. The Ability to Refute Trial Themes and Bias of Potential Witnesses

Netflix also argues this information is necessary to allow it to refute any "David v. Goliath" argument at trial. Id. at 3. Not only is this speculative, but now that Netflix has the name of the funder, it has the necessary information to refute any such argument. See Colibri Heart Valve LLC, 2021 WL 10425630, at *4 (addressing similar argument and concluding that litigation funding materials are not per se relevant and mere speculation is not enough to warrant their production).

Further, Netflix argues that the "litigation funding arrangement could reveal bias: "'to the extent persons affiliated with Plaintiff may receive substantial compensation through the litigation, that fact bears on their credibility.'" ECF No. 100, MTC at 3 (quoting Continental Circuits, 435 F. Supp. 3d at 1019). Though the issue of bias is a fair area of inquiry of any witness, this basis is again too speculative to warrant the production of litigation funding related documents. See NantWorks, LLC, 2022 WL 1500011, at *2 (noting "that 'fee and litigation

funding agreements' are generally discoverable only when there is 'a specific, articulated reason to suspect bias or conflicts of interest'") (quoting MLC Intell. Prop., 2019 WL 118595, at *2).

    e. Valuation Information

 Finally, Netflix argues that the "financier's valuation of the patents-in-suit . . . is also highly relevant to damages . . . ." ECF No. 100, MTC at 3. GoTV make two arguments in this regard: (1) no valuation was done by the litigation funder and any such claim by Defendant that one was done is purely speculation, which cannot support Defendant's argument; and (2) this valuation is not relevant under the reasonable royalty analysis because it was well after the hypothetical negotiation date and any valuation for litigation funding has no "more than a vague relationship (if that) with actual damages in patent litigation." ECF No. 101, Opp'n at 5-6.

 The speculation argument is persuasive, and after review of the documents in camera, whereby the Court concluded that there was no valuation information regarding the patents-in-suit in the withheld documents, the second argument is also persuasive. Consequently, there is no basis to conclude that the information sought is relevant.

 Out of an abundance of caution, however, the Court will also address the argument involving the AWP.

   2. Privilege Log

 Netflix's privilege log argument is similarly unavailing, considering the agreement the parties appeared to have had regarding producing such a log in this case, and which was not refuted by Netflix in its briefing or during the hearing. Moreover, as noted by GoTV, in this Circuit, failure to provide a privilege log within Rule 34's 30-day limit does not result in a "per se waiver," but rather, requires the application of various factors, including "applicable local rules, **agreements or stipulations among the litigants**, and discovery or protective orders." Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont., 408 F.3d 1142, 1149 (9th Cir. 2005) (emphasis added).

 Considering the agreement that was represented to have existed, and not refuted by Netflix, the Court finds that the totality of factors here do not support a conclusion that the AWP assertion was waived.

   3. AWP Analysis

 Netflix does not seriously contest the claim that the litigation funding related documents are protected under the AWP, other than to argue that "the identity of GoTV['s] . . . litigation financier, and facts regarding their involvement in this action, could not constitute attorney work product." ECF No. 100, MTC at 4 n.2 (emphasis in original). Now that GoTV has provided the information regarding the identity of the financier, that issue is moot. It is unclear what "facts regarding their involvement" constitutes, see id., and the Court will interpret it to mean the fact of their involvement, and not the litigation funding related documents and information.

Netflix's main argument is that the information should be provided because "they contain relevant valuations of the patents-in-suit, and . . . [D]efendant could not receive the information any other way." Id. at 4-5. In support of this argument Netflix cites to Odyssey Wireless, 2016 WL 7665898, at *7, where the court found that the defendant had not been provided any information regarding valuations, that the defendant could not obtain this information without undue hardship, found the documents to be relevant, and ordered the documents to be produced, but allowed for redaction of those portions of the documents that did not address valuation. ECF No. 100, MTC at 5. Netflix also cites to Preservation Technologies LLC, 2020 WL 10965161, at *7, and distinguishes that case from the present one, where the special master did not order the production of the litigation funder related materials because other licenses had been provided to the defendants such that there was no showing of a substantial need. ECF No. 100, MTC at 5.

Netflix has not carried its burden under either prong of the test set forth in Rule 26(b)(3)(A). First, as explained previously, under Rule 26(b)(1), Netflix has not carried its burden to show that the litigation funding related materials contain relevant material. Second, Netflix has not shown a substantial need for the documents.

Several facts are important in this regard: (1) an in camera review of the documents confirms that there are no valuations of the patents-in-suit in those documents; (2) GoTV stated during the hearing that several software licenses had been produced, which were entered into by the previous owner of the patents-in-suit and which Netflix claims involved software utilizing technology covered by the patents-in-suit; and (3) GoTV confirmed during the hearing that no licenses had been granted solely involving the patents-in-suit, i.e. a "naked" patent license.

Though the third fact militates toward allowing production of the documents, as Netflix has no other data points upon which to base a reasonable royalty rate, it is not enough to support a claim for a substantial need. This is because the documents do not contain any valuations, which would be helpful, and the software licenses that were produced may provide at least some information that may be utilized in the damages calculation.

### III.    CONCLUSION

For the reasons set forth previously, Defendant's Motion to Compel is **DENIED**.

**IT IS SO ORDERED.**