David M. Stein, #198256
dstein@brownrudnick.com
**BROWN RUDNICK LLP**
2211 Michelson Drive, 7ᵗʰ Fl
Irvine, CA 92612
Phone: 949.752.7100
Fax:    949.252.1514

Amir Alavi (Admitted *Pro Hac Vice*)
aalavi@aatriallaw.com
Masood Anjom (Admitted *Pro Hac Vice*)
manjom@aatriallaw.com
Justin Chen (Admitted *Pro Hac Vice*)
jchen@aatriallaw.com
Michael McBride (Admitted *Pro Hac Vice*)
mmcbride@aatriallaw.com
Scott Clark (Admitted *Pro Hac Vice*)
sclark@aatriallaw.com
C. Ryan Pinckney (Admitted *Pro Hac Vice*)
rpinckney@aatriallaw.com
Connie Flores Jones (Admitted *Pro Hac Vice*)
cfloresjones@aatriallaw.com
**ALAVI & ANAIPAKOS, PLLC**
609 Main Street, Suite 3200
Houston, Texas 77002
Phone: (713) 751.2362
Fax:    (713) 751.2341

Attorneys For Plaintiff
GoTV STREAMING, LLC

# IN THE UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| GOTV STREAMING, LLC,<br><br>    *Plaintiff*,<br><br>v.<br><br>NETFLIX, INC.,<br><br>    *Defendant*. | Case No. 2:22-cv-07556-RGK-SHK<br><br>HON. R. GARY KLAUSNER<br>COURTROOM 850 – ROYBAL<br><br>**PLAINTIFF GOTV STREAMING, LLC'S NOTICE OF MOTION AND OMNIBUS MOTION FOR SUMMARY JUDGMENT**<br><br>Date:         September 5, 2023<br>Time:        9:00 a.m.<br>Crtrm:      850<br><br>Action Filed: October 17, 2022<br>FAC Filed: November 10, 2022<br>Trial Date: October 17, 2023 |

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on, September 5, 2023, at 9:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 550 before the Honorable R. Gary Klausner of the above-entitled Court, located at 255 East Temple Street, Los Angeles, California 90012, Plaintiff GoTV Streaming, LLC ("Plaintiff" or "GoTV"), pursuant to Federal Rule of Civil Procedure 12(c), will and hereby does move the Court to: (1) grant summary judgment of "no evidence" that the "Astrology Zone" application identified by Netflix invalidates the asserted patents under the on-sale bar of 35 U.S.C. § 102; and (2) adopt GoTV's proposed claim constructions for the identified terms from the asserted patents.

This Motion is based upon this Notice and Motion, the accompanying Memorandum of Points and Authorities, all pleadings and documents concerning this matter contained in the Court's file, and all other arguments and evidence that may be presented to this Court.

The motion is made following a conference of counsel pursuant to L.R. 7-3, which took place on July 26, 2023.  During that conference, and in subsequent correspondence, Netflix opposes this Motion.

Dated:  August 4, 2023               Respectfully submitted,

                                     */s/ Amir Alavi*
                                     David M. Stein, #198256
                                     dstein@brownrudnick.com
                                     BROWN RUDNICK LLP
                                     2211 Michelson Drive, Seventh Floor
                                     Irvine, CA 92612
                                     Phone: 949.752.7100
                                     Fax:    949.252.1514

                                     Amir Alavi (Admitted *Pro Hac Vice*)
                                     Texas Bar No. 00793239
                                     aalavi@aatriallaw.com
                                     Masood Anjom (Admitted *Pro Hac Vice*)
                                     Texas Bar No. 24055107
                                     majom@aatriallaw.com
                                     Justin Chen (Admitted *Pro Hac Vice*)
                                     Texas Bar No. 24074024
                                     jchen@aatriallaw.com
                                     Michael McBride (Admitted *Pro Hac Vice*)
                                     Texas Bar No. 24065700
                                     mmcbride@aatriallaw.com
                                     Scott Clark (Admitted *Pro Hac Vice*)
                                     Texas Bar No. 24007003
                                     sclark@aatriallaw.com
                                     C. Ryan Pinckney (Admitted *Pro Hac Vice*)
                                     Texas Bar No. 24067819
                                     rpinckney@aatriallaw.com
                                     Connie Flores Jones (Admitted *Pro Hac Vice*)
                                     Texas Bar No. 00793736
                                     cfloresjones@aatriallaw.com
                                     ALAVI & ANAIPAKOS PLLC
                                     609 Main Street, Suite 3200
                                     Houston, Texas 77002
                                     Telephone: (713) 751-2362
                                     Facsimile:  (713) 751-2341

                                     *Counsel for Plaintiff GoTV Streaming, LLC*

David M. Stein, #198256
dstein@brownrudnick.com
**BROWN RUDNICK LLP**
2211 Michelson Drive, 7th Fl
Irvine, CA 92612
Phone: 949.752.7100
Fax:    949.252.1514

Amir Alavi (Admitted *Pro Hac Vice*)
aalavi@aatriallaw.com
Masood Anjom (Admitted *Pro Hac Vice*)
manjom@aatriallaw.com
Justin Chen (Admitted *Pro Hac Vice*)
jchen@aatriallaw.com
Michael McBride (Admitted *Pro Hac Vice*)
mmcbride@aatriallaw.com
Scott Clark (Admitted *Pro Hac Vice*)
sclark@aatriallaw.com
C. Ryan Pinckney (Admitted *Pro Hac Vice*)
rpinckney@aatriallaw.com
Connie Flores Jones (Admitted *Pro Hac Vice*)
cfloresjones@aatriallaw.com
**ALAVI & ANAIPAKOS, PLLC**
609 Main Street, Suite 3200
Houston, Texas 77002
Phone: (713) 751.2362
Fax:    (713) 751.2341

Attorneys For Plaintiff
GoTV STREAMING, LLC

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

|  |  |
|---|---|
| GOTV STREAMING, LLC,<br><br>            *Plaintiff*,<br><br>v.<br><br>NETFLIX, INC.,<br><br>            *Defendant*. | Case No. 2:22-cv-07556-RGK-SHK<br><br>HON. R. GARY KLAUSNER<br>COURTROOM 850 – ROYBAL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF GOTV STREAMING, LLC'S NOTICE OF MOTION AND RULE 37 MOTION TO EXCLUDE**<br><br>Date:        September 5, 2023<br>Time:        9:00 a.m.<br>Crtrm:       850<br><br>Action Filed: October 17, 2022<br>FAC Filed: November 10, 2022<br>Trial Date: October 17, 2023 |

# TABLE OF CONTENTS

I.   MOTION FOR SUMMARY JUDGMENT ON ASTROLOGY ZONE .............................. 1

   A.   INTRODUCTION ..................................................................... 1

   B.   LEGAL STANDARDS ............................................................... 2

   C.   ANALYSIS ............................................................................. 3

      1.   Netflix has No Evidence to Support its On-Sale Bar Theory. ....... 3

         a.   The Relevant Testimony Undercuts Netflix's Theory ......... 3

         b.   Netflix's Cited Documents Do Not Mention HOMBRE ..... 4

         c.   Netflix Did Not Analyze Any Version of Astrology Zone.   4

         d.   Netflix's Failure Warrants Summary Judgment. ................. 5

      2.   Netflix Did Not Analyze Which Claims are Allegedly Invalid. ..... 6

   D.   CONCLUSION ........................................................................ 7

II.  SUMMARY JUDGMENT ON CLAIM CONSTRUCTION ............................................. 8

   A.   LEGAL STANDARDS ............................................................... 8

   B.   TECHNICAL BACKGROUND ..................................................... 9

   C.   ANALYSIS ........................................................................... 10

      1.   GoTV's Proposed Claim Constructions Are Consistent with the Intrinsic and Applicable Extrinsic Evidence. ............................... 10

         a.   "command"/"render[ing] command[s]" ........................... 10

         b.   "wireless device generic template" .................................... 14

         c.   "custom configuration" ...................................................... 17

         d.   "rendering blocks" ............................................................. 18

   D.   CONCLUSION ...................................................................... 19

i

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,

4

   299 F.3d 1336 (Fed. Cir. 2002)............................................................3, 6

5

*Anderson v. Liberty Lobby, Inc.*,

6

   477 U.S. 242 (1986) ...........................................................................3, 4

7

*ArcelorMittal France v. AK Steel Corp.*,

   700 F.3d 1314 (Fed. Cir. 2012) ...............................................................12

8

*Aylus Networks, Inc. v. Apple, Inc.*,

9

   No. C–13–4700 EMC, 2015 WL 355174 (N.D. Cal. Jan. 27, 2015).................16

10

*Central Admixture Pharm. Serv., Inc. v. Advanced Cardiac Solutions, P.C.*,

11

   482 F.3d 1347 (Fed. Cir. 2007)................................................................5

12

*Certusview Techs., LLC v. S&N Locating Servs., LLC*,

13

   198 F. Supp. 3d 568 (E.D. Va. Aug. 2, 2016)...........................................6

14

*Cupp Computing AS v. Trend Micro Inc.*,

15

   53 F.4th 1376 (Fed. Cir. 2022)...............................................................13

16

*Group One, Ltd. v. Hallmark Cards, Inc.*,

17

   254 F.3d 1041 (Fed. Cir. 2001)...............................................................3

18

*Imaginal Systematic, LLC v. Leggett & Platt, Inc.*,

   No. 10-cv-07416-RGK-SSx, 2011 WL 12829818 (C.D. Cal.

19

   Nov. 23, 2011)..............................................................................8, 15

20

*Interwoven, Inc. v. Vertical Comp. Sys.*,

21

   Case No. 10-cv-4645, 2013 WL 75770 (N.D. Cal. Jan. 4, 2013)....................6

22

*Kraft Foods, Inc. v. Int'l Trading Co.*,

23

   203 F.3d 1362 (Fed. Cir. 2000)...............................................................6

24

*Markman v. Westview Instruments, Inc.*,

25

   52 F.3d 967 (Fed. Cir. 1995)..................................................................8

26

*Nelson v. Pima Comm. College*,

27

   83 F.3d 1075 (9th Cir. 2020) .................................................................3

28

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)........................................................8, 12

*United States v. Telectronics, Inc.*,
    857 F.2d 778 (Fed. Cir. 1988)...............................................................16

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)..................................................................8

**Statutes**

35 U.S.C. § 102 ..............................................................................................1

I. **MOTION FOR SUMMARY JUDGMENT ON ASTROLOGY ZONE**

A. **INTRODUCTION**

Netflix seeks to invalidate all three of GoTV's asserted patents under the "on-sale bar" of 35 U.S.C. § 102, which provides that a patent is invalid if the applicant sells or offers to sell their invention more than one year before filing their application. Specifically, Netflix argues that the original applicant, Hands-On Mobile, Inc., triggered this bar by selling an application called "Astrology Zone" before August 1, 2006, which is one year before the patents' effective filing date of August 1, 2007.

It is undisputed, however, that there were multiple versions of Astrology Zone, and Netflix does not argue that every version of Astrology Zone triggers the on-sale bar. GoTV's Statement of Facts ("SOF") 7-9. Instead, Netflix asserts that: "Astrology Zone practiced the patents *by virtue of using HOMBRE*," a development platform created by Hands-On Mobile.[1] SOF 1 (emphasis added). Based on the testimony of Hands-On Mobile's Director of Operations, Mr. Jason Powell, Netflix posits that "all HOMBRE versions of applications practice the Asserted Patents" and then leaps—without any actual evidence—to the conclusion that the specific version of Astrology Zone sold before August 1, 2006, was an HOMBRE-version and, therefore, triggered the on-sale bar. SOF 5-6.

Netflix ignores the undisputed fact that not all versions of Astrology Zone were developed using HOMBRE. As Mr. Powell testified, there were both Hombre-versions *and non-HOMBRE versions* of Astrology Zone:

**Q:** And earlier you stated that some applications like Astrology Zone used HOMBRE? Do you recall that testimony?

**A:** **I recall that, yes.**

---

[1] As characterized by Netflix's expert, HOMBRE ("Hands-On Mobile Binary Runtime Environment") is a development system where a server communicates with a 'thin client' with limited resources. SOF 2-4.

**Q:** And for those applications, were you saying that every version of that application used HOMBRE?

**A: No, there were multiple versions. Some would have been HOMBRE and some would have been non-HOMBRE.**

SOF 7-9 (stating that "[t]here was multiple versions" of the Astrology Zone application). As a result, the proper question is not whether Astrology Zone in general was on sale before August 1, 2006, but rather whether a version of Astrology Zone built on HOMBRE was on sale before that critical date.

On this issue, Netflix has no evidence that the version of Astrology Zone that allegedly triggered the on-sale bar used HOMBRE or even that the HOMBRE platform existed as of August 1, 2006. Despite Mr. Powell's testimony that there were "multiple versions" of Astrology Zone, Netflix did not investigate the underlying platform used in any particular version, nor did Netflix perform any technical analysis to connect its identified version of Astrology Zone to HOMBRE. Instead, Netflix's entire argument is premised on nine marketing documents pulled from the internet, none of which makes any reference to "HOMBRE" or the underlying technical platform. SOF 17-18. As a result, Netflix has no evidence that an HOMBRE-version of Astrology Zone was on sale before August 1, 2006. This alone warrants summary judgment.

Compounding this fatal problem, Netflix also failed to perform a claim-by-claim analysis—which is required for purposes of the on-sale bar—to even determine which claims, if any, are allegedly invalid. Netflix's failure to do the required technical analysis for invoking the on-sale bar provides a second reason why summary judgment of no invalidity based on Astrology Zone is appropriate.

**B. LEGAL STANDARDS**

"An accused infringer, challenging a presumptively valid patent, must demonstrate by clear and convincing evidence that there was a definite sale or offer to sell more than one year before the application for the subject patent, and that the subject matter of the sale or offer to sell fully anticipated the claimed invention." *Group One,*

1  *Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1045–46 (Fed. Cir. 2001).  "The on-sale

2  bar is evaluated on a claim-by-claim basis, so that some claims of a patent may be found

3  to be barred while others are not."  *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d

4  1336, 1353 (Fed. Cir. 2002).

5      For purposes of summary judgment, "[t]he mere existence of a scintilla of

6  evidence in support of the [party]'s position will be insufficient; there must be

7  evidence on which the jury could reasonably find for the [party]."  *Anderson v. Liberty

8  Lobby, Inc.*, 477 U.S. 242, 252 (1986).  "Mere allegation and speculation do not create

9  a factual dispute for purposes of summary judgment."  *Nelson v. Pima Comm.

10  College*, 83 F.3d 1075, 1081–82 (9th Cir. 2020).

11      **C. ANALYSIS**

12      **1.  Netflix has No Evidence to Support its On-Sale Bar Theory.**

13      There is no dispute that August 1, 2007, is the relevant priority date for all three

14  asserted patents.  SOF 10-11.  As a result, to meet its heightened burden for the on-sale

15  bar, Netflix must show by clear and convincing evidence that a version of Astrology

16  Zone built on the HOMBRE platform was on sale more than one year earlier—i.e.,

17  before August 1, 2006.  Netflix has no evidence of this.

18      **a.  The Relevant Testimony Undercuts Netflix's Theory.**

19      As an initial matter, Netflix's assertion that an HOMBRE-version of Astrology

20  Zone was on sale before August 1, 2006, ignores the uncontroverted evidence.

21      For example, Hands-On Mobile's Director of Operations, Mr. Powell, testified

22  there were "multiple versions" of Astrology Zone: "Some would have been HOMBRE

23  and some would have been non-HOMBRE."  SOF 7-9.  With respect to the HOMBRE

24  versions, Hands-On Mobile issued a press release on March 26, 2007—long after the

25  critical date—in which it "announced the Hands-On Mobile Runtime Environment

26  (HOMBRE), a rapid-development platform that revolutionizes how mobile

27  applications are built and deployed."  SOF 12-13.  As part of that announcement,

28  Hands-On Mobile stated that "Hands-On Mobile ***will release*** a suite of HOMBRE-

based applications." *Id.* (emphasis added); *see also* SOF 14 (similarly announcing that "New Applications Launch in 2007"). There is no evidence that an HOMBRE-version of Astrology Zone was on sale seven months before Hands-On Mobile's HOMBRE announcement.

### b. Netflix's Cited Documents Do Not Mention HOMBRE.

In support of its on-sale bar theory, Netflix identifies just nine documents. SOF 15. But these documents are merely marketing materials that, for example, extol the "centuries old science" of daily horoscopes, zodiac signs, and astrological matchmaking. *See* SOF 16. None of these documents reference HOMBRE, and none of the documents discuss the underlying platform used in the identified version of Astrology Zone. SOF 17-18. As a result, these documents cannot substitute for actual evidence on which a jury could reasonably find for Netflix. *See Anderson*, 477 U.S. at 252 (holding that "there must be evidence on which the jury could reasonably find for the [party]").

### c. Netflix Did Not Analyze Any Version of Astrology Zone.

In addition to having no evidence that links its identified version of Astrology Zone to HOMBRE, Netflix also has no evidence of how its identified version was built or how it worked "under the hood."

Although Netflix's expert, Dr. Villasenor, offers the conclusory opinion that Astrology Zone "renders the Asserted Claims invalid," he failed to analyze any version of Astrology Zone sold before August 1, 2006. SOF 22-25. Dr. Villasenor did not conduct any technical investigation or apply his own technical expertise to render any opinion.[2] Instead, his opinion is based entirely on testimony that "all the HOMBRE applications embody the patents" and his bare assumption—without any

---

[2] Pursuant to the parties' agreement, *Daubert* motions will be filed at the same time as motions *in limine*.

actual technical support or analysis—that the version of Astrology Zone sold before August 1, 2006, was an HOMBRE version.  SOF 21.

A simple analogy highlights the fatal flaw in Dr. Villasenor's opinion.  Just because Ford admits that the Mustang has a back-up camera—and admits that the Ford Mustang was on-sale in 1965—does not mean that the 1965 version of the Ford Mustang had a back-up camera.  This type of argument would not be properly put to the jury.  For the same reasons, neither Netflix nor its expert should be allowed to suggest that their identified version of Astrology Zone triggers the on-sale bar when there is no evidence that it actually used HOMBRE.

### d.  Netflix's Failure Warrants Summary Judgment.

In *Central Admixture*, the defendant argued that an article referencing surgeries "conducted on patients between May 1984 and April 1985" showed public use of the patent under § 102.  *See Central Admixture Pharm. Serv., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1357 (Fed. Cir. 2007).  As the Federal Circuit noted, "[p]art of that period—between an unspecified date in May 1984 and August 20, 1984—falls more than one year before the application for patent."  *Id.*  The Federal Circuit emphasized, however, that "[t]he article is totally nonspecific, though, as to what type of surgical activity occurred before August 21, 1984, and ACS has presented no other evidence whatsoever that any surgeries using the claimed invention actually took place before that critical date."  *Id.*  The Federal Circuit then held, "[o]n this very sketchy record, no reasonable jury could find by clear and convincing evidence that the described surgeries using the claimed invention occurred prior to the critical date."  *Id.* at 1358 (affirming summary judgment).

Netflix faces the exact same problem here.  Its alleged evidence "is totally nonspecific" as to what particular version of Astrology Zone—HOMBRE or non-HOMBRE—was available before August 1, 2006, and Netflix has "no other evidence whatsoever" as to the use of HOMBRE before that critical date.  *Id.*; *see also Certusview Techs., LLC v. S&N Locating Servs., LLC*, 198 F. Supp. 3d 568, 602

(E.D. Va. Aug. 2, 2016) (holding that "S&N has introduced no evidence that a version of ESRI ArcPad, capable of marking up a photographic image, was prior art"). Accordingly, summary judgment is warranted.

## 2. Netflix Did Not Analyze Which Claims are Allegedly Invalid.

Compounding the fatal problems above, Netflix does not have any evidence of which asserted claims, if any, were allegedly practiced by HOMBRE or Astrology Zone. Instead, Netflix relies solely on testimony that "all the HOMBRE applications embody the patents." *See* SOF 23-25 (quoting Mr. Powell's testimony).

The mere fact that a product embodies a patent does not mean that it reads on each and every claim. Each patent claim is an independent invention, and, by definition, each claim must have a different scope. *See Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1366 (Fed. Cir. 2000) (holding that "two claims of a patent are presumptively of different scope"). This is why the controlling law requires a claim-by-claim analysis. *See Allen*, 299 F.3d at 1353 (holding that "[t]he on-sale bar is evaluated on a claim-by-claim basis, so that some claims of a patent may be found to be barred while others are not").

For example, in *Interwoven*, the alleged infringer similarly argued that the WebOS product triggered the on-sale bar because it "embodies the claimed invention." *See Interwoven, Inc. v. Vertical Comp. Sys.*, Case No. 10-cv-4645, 2013 WL 75770, at *7 (N.D. Cal. Jan. 4, 2013). Quoting the Federal Circuit, the district court noted that "[t]he on-sale bar is evaluated on a claim-by-claim basis" and that "specific findings of fact must link elements of the product on sale to each claim limitation." *Id.* (quoting *Allen*, 299 F.3d at 1353). The court then emphasized that the alleged infringer "does not identify the specific claims allegedly anticipated or rendered obvious by the sale of the early versions of the WebOS product." *Id.* "Without such specific claims, the on-sale bar cannot be adequately evaluated." *Id.* (rejecting the alleged infringer's on-sale bar argument).

Netflix faces an identical problem here. Netflix has no evidence as to which claims, particularly which **dependent** claims, are included in the mere assertion that "all the HOMBRE applications embody the patents." *See* SOF 23-25. Moreover, because each of the three asserted patents includes multiple independent claims with different language and elements, Netflix cannot even argue that practicing a patent must logically include at least reading on a particular independent claim. *See, e.g.*, Exs. 17, 18 and 19 (respective claim sections).

As a result, even if Netflix hypothetically had some evidence that its identified version of Astrology Zone used HOMBRE, Netflix **still** would not have any evidence as to which specific claims from the patents could possibly be invalid under the on-sale bar. Accordingly, the Court has a second, independent basis to grant GoTV's summary judgment motion.

**D. CONCLUSION**

To survive summary judgment, Netflix needs more than a scintilla of evidence that: (i) an HOMBRE-version of Astrology Zone was on sale before August 1, 2006; and (ii) that HOMBRE actually practices each and every claim of the asserted patents. Despite undisputed testimony that there were both HOMBRE-versions and non-HOMBRE versions of Astrology Zone, Netflix has no evidence that its identified version of Astrology Zone used HOMBRE, and Netflix failed to perform the claim-by-claim analysis required under the law. Netflix has no evidence that supports its on-sale bar argument. Given Netflix's failure of proof on every aspect of the on-sale bar, summary judgment of no invalidity based on Astrology Zone is appropriate.

## II.   SUMMARY JUDGMENT ON CLAIM CONSTRUCTION

### A. LEGAL STANDARDS

"Claim construction is a question of law."[3]   *Imaginal Systematic, LLC v. Leggett & Platt, Inc.*, No. 10-cv-07416-RGK-SSx, 2011 WL 12829818, at *2 (C.D. Cal. Nov. 23, 2011).  "Courts may use intrinsic and extrinsic evidence in construing claims."  *Id.*  "Intrinsic evidence includes the claim terms, the patent specification, and the prosecution history."  *Id.*  "Extrinsic evidence includes other sources such as expert testimony, inventor testimony, dictionaries, and treatises."  *Id.*  "Compared to intrinsic evidence, extrinsic evidence is generally less reliable and must be used with caution."  *Id.* at *3.  "Overall, extrinsic evidence is 'unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence.'"  *Id.*

"Patent claims must be read in view of [the] specification, of which they are part."  *Id.* at *2.  "A correct construction of the claims 'most naturally aligns with the patent's description of the invention.'"  *Id.*  "In contrast, claim construction that conflicts with the specification 'is rarely, if ever, correct.'"  *Id.* (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)).  "Even when the specification discloses only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expression of manifest exclusion or restriction."  *Id.*

A patentee may define his own terms or give a claim term a different meaning than it would otherwise possess.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005).  In these situations, the inventor's lexicography governs.  *Id.*

---

[3] Summary Judgment is an appropriate vehicle for claim construction. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 981 (Fed. Cir. 1995) (*en banc*).

## B. TECHNICAL BACKGROUND[4]

At the time of the invention, the growing popularity of wireless devices led to more device types with a unique set of attributes for each model.  SOF 26.[5]  Increasing device numbers led to higher demand for software applications tailored in accordance with a device's attributes to fully utilize its capabilities.  SOF 27.  These applications were generally run and rendered locally.  SOF 28.  The resulting problems included increased development costs due to the higher number of application versions needed for the different device types.  SOF 29.

The Asserted Patents' solution is to use a novel way of rendering content on a wireless device that implements a specific distributed network architecture and algorithm instead of relying solely on the user's device.  SOF 30-32.  In one embodiment, a server generates a wireless device generic template containing relative screen locations instead of specific or actual screen dimensions.  SOF 33.

The server also sends a custom configuration to the device, which is a data structure with styling data (such as background images, text color, and font) that customizes the "look and feel" associated with the application.  SOF 34.  The server also generates a page description based on: (1) the wireless device generic template, and (2) a capability of the wireless device.  SOF 35.  The page description is a data structure that includes at least one discrete low level rendering command.  SOF 36.

This improved process and architecture solved the existing problems with developing applications for wireless devices at the time of the invention.  SOF 37 ("Developing generic applications regardless of the wireless device type is in part possible because the server may be used to operate on a generic application and tailor the result of executing a generic application based on a wireless device capability.").

---

[4] *See also* Dkt. No. 88 at 4–7.

[5] All Asserted Patents share the same specification.

## C. ANALYSIS

### 1. GoTV's Proposed Claim Constructions Are Consistent with the Intrinsic and Applicable Extrinsic Evidence.

#### a. "command"/"render[ing] command[s]"

| Term | Plaintiff | Defendant |
|------|-----------|-----------|
| "command" | "A description for rendering a page component, such as the width or the height of the component" | See "render[ing] command[s]" |
| "render[ing] command[s]" | See "command" | "Instruction[s] to generate graphics on a display" |

The central dispute is whether "command" is limited to an "instruction." GoTV proposes that a "command" is a "description" that can, but is not required to, include an "instruction." SOF 38-41. This is drawn from the intrinsic evidence, which explains the term "[rendering] command" is a description for rendering a page component:

> Each basic ***command*** may describe a given component on the page of the requested application ***to be rendered*** and includes a rendering block to be used. For example, a basic ***command*** 410 may ***be a description for rendering an image*** whereas a basic command 430 may ***be*** the description for rendering a video clip.

SOF 42. Thus, the specification, which is "the single best guide to the meaning of a disputed term," teaches that a "command" can be just a "description." *Phillips*, 415 F.3d at 1315. And that description is for rendering a page component such as an image or video clip. SOF 44.

The intrinsic evidence further provides examples of basic rendering commands (items 410–90):



SOF 45.  "[B]asic command 410 may further include the width 416 and the height 418 of the screen region to include image."  SOF 46.  Including "the width or the height" as examples in the construction of "command" will help clarify the term for the jury and avoid jury confusion if Netflix argues that "the width or the height" cannot be a "command."

Accordingly, in view of the intrinsic evidence, a person of ordinary skill in the art ("POSA") would understand that the term "command" means "a description for rendering a page component, such as the width or the height of the component." GoTV's expert, Stuart Lipoff ("Lipoff"), confirmed this analysis.  SOF 47.

Netflix's position is incorrect.  First, its proposed "instruction" requirement invites error because it is unsupported by the specification and relies, unlike GoTV's construction, primarily on less reliable extrinsic evidence.  Extrinsic evidence "may not be used to contradict claim meaning that is unambiguous in light of the intrinsic

evidence." *ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314, 1320 (Fed. Cir. 2012).

Because the intrinsic evidence does not support requiring an "instruction," Netflix reads things into the specification that are not there.  Netflix's expert, John Villasenor ("Villasenor"), says a POSA "would have understood 'command' to mean 'instruction' because . . . the specification explains that 'commands [are] **operable to render** content on the wireless device.'"  SOF 53.  But the fact that "basic commands may be low level compilation *operable to render* application content" does not mean "commands" are limited to "instructions."  SOF 48.  "Operable to render" simply means capable of being used to render.  *Id.*  The descriptions in Figure 4 are capable of being used to render page components, even if Netflix does not consider them to be "instructions."  SOF 49.  As Lipoff explains, the description of the width and the height associated with an image can be used to render that image.  SOF 50.

Villasenor further opines that "claim 4 of the '865 patent makes clear that a command is 'operable to be executed' to cause something to happen."  SOF 53.  But this, too, does not mean "commands" are limited to "instructions."  A POSA would understand that the descriptions in Figure 4 are executed, even if Netflix does not consider them to be "instructions," because they constitute computer code.  SOF 51.  Furthermore, claim 4 depends on claim 1, and it further limits claim 1 by requiring that the "*rendering command* of said page description *is operable to be executed* . . .,*"* so that limitation is presumed not to be required in the broader claim 1.  *Phillips*, 415 F.3d at 1315; SOF 52.

Netflix also relies on certain technical dictionaries and the deposition testimony of a third-party witness for its "instruction" requirement.  SOF 53.  But this extrinsic evidence "may not be used to contradict claim meaning that is unambiguous in light of" the portions of the specification on which GoTV relies.  *ArcelorMittal*, 700 F.3d at 1320.

Netflix also points to extrinsic evidence from GoTV's infringement

contentions.  Netflix contends that "Plaintiff admits that commands are 'instructions'" because GoTV pointed to "instructions" in its infringement contentions.  SOF 56.  But GoTV has done nothing of the sort.  GoTV's position is that an instruction **can be** a command, not that all commands **must be** instructions.  SOF 57-59.  Indeed, GoTV argues that the relevant "command" limitation is met in multiple ways, including by the width and the height of images, which Netflix contends are not "instructions." SOF 58.

Netflix speculates that GoTV cannot be correct because the patentee could have used the word "description" rather than "command" in the claim language.  SOF 54. But such "logic" equally cuts against Netflix's construction because the patentee could also have used the word "instruction" instead of "command."  Moreover, the patent drafter already recited a "page **description**," so practical consideration may have meant avoiding using "description" to explain what the "page description" includes.  SOF 55.

Second, Netflix's interpretation of "instruction" —essentially a construction of its own construction—would exclude a preferred embodiment.  Netflix contends that the width and the height of an image do not qualify as an "instruction."  Accordingly, Netflix's "instruction" definition would exclude the preferred embodiment shown in Figure 4, which explicitly points to the width (416) and height (418) of an image as constituting a "command."  SOF 60.  Such an interpretation is "rarely, if ever, correct."  *Cupp Computing AS v. Trend Micro Inc.*, 53 F.4th 1376, 1381 (Fed. Cir. 2022).  Notably, Netflix has not identified a single example of a "command" in the specification consistent with its understanding of "instruction."  SOF 61.

Aside from the dispute regarding "instruction," Netflix proposes defining "render[ing]" as "to generate graphics on a display."  SOF 62.  The Court should reject this proposal.  First, the portions of the specification that Netflix relies on do not even mention the terms "render" or "rendering."  SOF 63.  Second, "rendering" does not have to be for the purposes of **displaying**.  SOF 64.  Claim 8 of the '865 Patent

explicitly recites an "audio *rendering* command." SOF 65. Audio typically refers to a sound emanating from speakers, not to output on a display. SOF 66. Netflix's 30(b)(6) technical witness confirmed the same. SOF 67 ("I suppose [rendering] could be also rendering audio.").

In sum, Netflix's construction and arguments improperly rely on extrinsic evidence that conflicts with the intrinsic record. In contrast, GoTV's definition is taken straight from the specification.

### b. "wireless device generic template"

| Term | Plaintiff | Defendant |
|------|-----------|-----------|
| "wireless device generic template" | "A template for a wireless device that is independent of a capability of the device" | "A screen description in a high level language" |

There are two disputes regarding this term: (1) what "generic" means; and (2) whether "screen description" should be included in the definition. SOF 68-71, 89. As to the first issue, GoTV's construction follows the intrinsic evidence's consistent teaching that "generic" means independent of device capability. SOF 72. In contrast, Netflix's construction does not capture this primary meaning, instead proposing to equate "generic" to "written in a high level language" because the specification teaches that using a high-level language is permitted, but not required.

The intrinsic evidence is explicit regarding what makes a template for a wireless device "generic":

> The *generic template* supplied from 530 and the dynamic template supplied from 550 *do not contain any specific or actual screen dimensions* but rather only contain relative screen locations.

SOF 73-75. That is, "generic" is used to contrast with items that are "device *specific*" (*i.e.*, dependent upon the device capabilities).

14

The specification likewise uses "generic" in the same manner when describing what makes an application or syntax "generic." SOF 76 (explaining that a "generic" application "is generic in that it is *not specific to any device or any set of device capabilities*"); SOF 77 ("[S]yntax that is device generic [is such because it is the same] *regardless of the wireless device type*."); *see also* SOF 76-80. Indeed, the specification notes that a template can be turned into "device specific" commands once they are based on the wireless device's capability. SOF 79 ("Accordingly, the layout solver 580 receives a dynamic template from the template engine 550 . . . translates it to *device specific commands based on the client's capability*."). Examples of these "device specific" commands are shown in Figure 4, which include "specifying the Cartesian coordinates 412 and 414 of a screen region" of the wireless device. SOF 80.

Netflix's construction invites error because it fails to recognize the intrinsic record's fundamental teaching that "generic" concerns independence from the capabilities of the wireless device. SOF 81. Regardless of the "level" of a language used to put together the template—as "level" is used to describe software generally and divorced from the Asserted Patents—if the template is completely specific to device capabilities, it is not generic. SOF 82.

Netflix argues that the specification discloses one embodiment where "[f]or dynamic data, the decoding system 520 communicates a page of the application to a template engine 550[, whereby] [t]he page is [a] generic template describing the screen in a high level language, e.g., XML." SOF 83. That a single embodiment uses a high-level language is insufficient to limit the term to only high-level languages. *Imaginal*, 2011 WL 12829818, at *2. To read a term so narrowly requires the patentee to demonstrate "a clear intention to limit the claim scope using words or expression of manifest exclusion or restriction." *Id.* But other portions of the specification show there is no such intent, noting that use of a high level language is *permissive*. SOF 84 ("The dynamic template output from the template engine 550 *may be* in a high level

language, e.g., XML."). Therefore, contrary to Netflix's construction, a "wireless device generic template" does not require a high level language. SOF 86.

As to the second issue, it is improper for Netflix to include "screen description" in the definition. The patentee specifically removed "screen description" during prosecution:

**Amendments to the Claims**

1.     (Currently Amended) A server implemented method for processing data for a wireless device, comprising:

    receiving from the wireless device a request for an application program, said request including an indication of a type of the wireless device;

    executing, in response to receiving said request, said application program to generate a wireless device generic template including a plurality of content items;

    sending a custom configuration to the wireless device, said custom configuration being specific to said application program;

    generating a ~~screen description~~ page description based on said wireless device generic template and a capability of the wireless device, said ~~screen description~~ page description having at least one discrete low level rendering command that is within said rendering capability of said wireless device but that is of a syntax that is wireless device generic; and

    sending said ~~screen description~~ page description to the wireless device such that the wireless device is capable of presenting at least one content item from said plurality of content items using both said ~~screen description~~ page description and said custom configuration.

SOF 87.

First, the "screen description" was recited separately from the "wireless device generic template," which shows that the latter is not, and does not include, the former. SOF 88. Second, it would be improper to allow Netflix to add back limitations that the patentee explicitly eliminated. *See Aylus Networks, Inc. v. Apple, Inc.*, No. C–13–4700 EMC, 2015 WL 355174, at *11 (N.D. Cal. Jan. 27, 2015) ("In general, if a claim limitation was removed during prosecution, it is improper to read that limitation back into the claim during litigation."); *United States v. Telectronics, Inc.*, 857 F.2d 778, 783 (Fed. Cir. 1988) ("[C]ourts are not permitted to read back into the claims limitations which were originally there and were removed during prosecution of the

application through the Patent Office.").   Accordingly, Netflix's construction is incorrect.

### c.  "custom configuration"

| Term | Plaintiff | Defendant |
|------|-----------|-----------|
| "custom configuration" | "A configuration that determines certain graphical appearances, or the look and feel, of the application" | "Instructions that determine the look and feel of the application" |

Similar to the "command" term, the dispute is whether a "custom configuration" is limited to "instructions."  SOF 90-93.  GoTV's construction is based on the specification, which explains what the patentee meant by the term "custom configuration":

> The custom configuration is the theme and determines certain graphical appearances of the requested application. In other words, the custom configuration provides the "look and feel" of the content of the requested application.

SOF 94.  GoTV's construction aligns with the intrinsic record, and a POSA would understand it is correct.  SOF 95.

Netflix's attempt to shoehorn "instructions" into the definition—much like in "command"—is improper.  The specification explains that "the terms configuration *data* and custom configuration are used interchangeably throughout this application." SOF 96.  And examples of "configuration data" given by the specification include text fonts and colors, which Netflix does not consider to be "instructions."  SOF 97. Therefore, Netflix's definition of custom configuration—especially in light of Villasenor's opinion regarding what constitutes an "instruction" when discussing "command"—would exclude these embodiments.  SOF 98 ("Data do not include commands (i.e., instructions) to do anything.").  Netflix's position contradicts the specification and cannot be correct.

Netflix may point to a portion of the specification stating that "a custom configuration *may be* a set of low level instructions for preprogramming the plurality of rendering blocks to operate and look a certain way." SOF 99-100. Again, this is permissive language, and Netflix's attempt to make it mandatory invites error.

A POSA would not use this one permissive statement to override and contradict the specification that makes clear that a custom configuration is not limited to "instructions." SOF 96-97. Although Villasenor provided opinions regarding the "command" and "wireless device generic template" terms, he did not offer any opinions supporting Netflix's construction of "custom configuration." SOF 101.

### d. "rendering blocks"

| Term | Plaintiff | Defendant |
|---|---|---|
| "rendering blocks" | "Blocks that perform discrete rendering operations" | "Graphical user interface items that display application content to a user and enable a user to interact with an application" |

GoTV's construction comes directly from the intrinsic record:

A graphical user interface layer 108 includes a number of individual *rendering blocks* 108a *that perform discrete rendering operations* to render a received page description.

SOF 106.

This explicit definition of "rendering blocks" is consistent with the specification's examples of rendering blocks. For example, a "static text is a rendering block used to display text." SOF 107. As another example, "[s]ound is a rendering block for a non visual control to play sound." SOF 108. Therefore, a POSA would understand that a particular "static text" rendering block would be responsible for rendering certain text, and the "sound" rendering block would play a particular

18

audible signal.  SOF 109-111.  The "rendering blocks" perform "discrete rendering operations" in that each is a dedicated specific operation.  *Id.*  The "static text" block cannot render audio like the "sound" rendering block, and vice versa.  *Id.*  GoTV's construction aligns with the intrinsic evidence, and a POSA would understand it is correct.  SOF 102-105, 111.

Netflix's construction is incorrect in at least two respects:  a rendering block does not need to: (1) "***display*** application content," or (2) "enable a user to ***interact***." Regarding the "display" of content, a "sound" could be a rendering block that is not "displayed."  SOF 112-116 ("I suppose [rendering] could be also rendering audio.").

As for user interaction, Netflix's construction would exclude several examples of "rendering blocks" described in the Asserted Patents.  The specification discusses rendering blocks that may be output only (sound, text) or input/output (text box, audio ***controls***, etc.), and only the latter allow for user "interaction."  *Id.*  For example, a "[c]heck box/radio button is a rendering block allowing the user to select/deselect an option in a screen."  SOF 114.  This rendering block enables user interaction.

Conversely, both "sound" and "static text" rendering blocks do not, by themselves, allow input from a user and, therefore, do not allow "interaction."  SOF 115.  As another example, a "ticker" is simply "a rendering block to display a horizontally scrolling text" and does not allow user input or interaction.  SOF 116. Because Netflix's construction would exclude several embodiments of "rendering blocks" disclosed in the specification, it cannot be correct.  Indeed, Villasenor did not provide any opinions supporting Netflix's construction of "rendering blocks."  SOF 117.

### D. CONCLUSION

For the reasons above, the Court should reject Netflix's claim construction arguments and adopt GoTV's proposed constructions for the above terms.

Dated:  August 4, 2023

Respectfully submitted,

*/s/  Amir Alavi*
David M. Stein, #198256
dstein@brownrudnick.com
BROWN RUDNICK LLP
2211 Michelson Drive, Seventh Floor
Irvine, CA 92612
Phone: 949.752.7100
Fax:    949.252.1514

Amir Alavi (Admitted *Pro Hac Vice*)
Texas Bar No. 00793239
aalavi@aatriallaw.com
Masood Anjom (Admitted *Pro Hac Vice*)
Texas Bar No. 24055107
majom@aatriallaw.com
Justin Chen (Admitted *Pro Hac Vice*)
Texas Bar No. 24074024
jchen@aatriallaw.com
Michael McBride (Admitted *Pro Hac Vice*)
Texas Bar No. 24065700
mmcbride@aatriallaw.com
Scott Clark (Admitted *Pro Hac Vice*)
Texas Bar No. 24007003
sclark@aatriallaw.com
C. Ryan Pinckney (Admitted *Pro Hac Vice*)
Texas Bar No. 24067819
rpinckney@aatriallaw.com
Connie Flores Jones (Admitted *Pro Hac Vice*)
Texas Bar No. 00793736
cfloresjones@aatriallaw.com
ALAVI & ANAIPAKOS PLLC
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile:  (713) 751-2341

*Counsel for Plaintiff GoTV Streaming, LLC*

## __CERTIFICATE OF COMPLIANCE__

The undersigned, counsel of record for GoTV Streaming, LLC, certifies that this brief contains 5,376 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Amir Alavi*
Amir Alavi

*Counsel for Plaintiff GoTV Streaming, LLC*