UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

closed

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07556-RGK-SHK | Date | March 26, 2024 |
|---|---|---|---|
| Title | *GoTV Streaming, LLC v. Netflix, Inc.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Motion for Attorneys' Fees and Renewed Motions for Judgment as a Matter of Law [DEs 432, 439, 440]

## I. INTRODUCTION

On November 10, 2022, GoTV Streaming, LLC ("Plaintiff") filed the operative First Amended Complaint ("FAC") against Netflix, Inc. ("Netflix" or "Defendant") alleging direct and induced infringement of various patent claims. (ECF No. 44.)

The case went to trial on October 17, 2023. By this point, the case had considerably narrowed. Following the dismissal and withdrawal of various claims and theories, Plaintiff asserted that Defendant directly infringed two patent claims: claim 16 of U.S. Patent No. 8,478,245 (the "'245 Patent") and claim 4 of U.S. Patent No. 8,989,715 (the "'715 Patent") (collectively, the "Asserted Claims"). At the conclusion of the case, both parties moved for judgment as a matter of law ("JMOL"). (ECF Nos. 389, 403.) The Court deferred consideration of the Motions. After the trial concluded, the jury found Defendant infringed claim 4 of the '715 Patent, but not claim 16 of the '245 Patent, and awarded Plaintiff $2.5 million in damages as a lump-sum payment.

On November 28, 2023, the Court granted the parties' Motions for JMOL in part. (ECF No. 415.) The Court found as a matter of law that there was no infringement under the doctrine of equivalents, that Plaintiff owned the '715 and '245 Patents, and that the Asserted Claims are not invalid. The Court denied, however, both parties' requests to overturn the jury verdict. Subsequently, following some motion practice regarding a dispute over pre-judgment interest, the Court entered a final judgment on January 16, 2024. (ECF No. 425.)

Presently before the Court are three Motions: (1) Plaintiff's Motion for Attorneys' Fees; (2) Plaintiff's Renewed Motion for JMOL or, in the alternative, Motion for New Trial; and (3) Defendant's Renewed Motion for JMOL. (ECF Nos. 432, 439, 440.) Plaintiff seeks attorneys' fees associated with Defendant's invalidity defense, which it contends was secretly abandoned before trial, but preserved to distract Plaintiff. Plaintiff also seeks JMOL that Defendant infringed claim 16 of the '245 Patent, or a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07556-RGK-SHK | Date | March 26, 2024 |
|---|---|---|---|
| Title | *GoTV Streaming, LLC v. Netflix, Inc.* | | |

new trial thereupon, and a new trial on damages. Meanwhile, Defendant seeks JMOL that it did not infringe claim 4 of the '715 Patent. For the following reasons, the Court **GRANTS** Plaintiff's Motion for Attorneys' Fees, **DENIES** Plaintiff's Renewed Motion for JMOL and New Trial, and **DENIES** Defendant's Renewed Motion for JMOL.

As a threshold issue, Plaintiff's Motion for Attorneys' Fees and Motion for New Trial on damages may be granted only if Defendant is liable for infringement. Because the parties argue about infringement in their Renewed Motions for JMOL, the Court first addresses the Renewed Motions for JMOL, and then assesses Plaintiff's Motion for New Trial on damages and Motion for Attorneys' Fees.

II.    **RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW**

   A.    **Judicial Standard**

A court may grant a motion for JMOL against a party on any issue when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). A party whose JMOL motion made under Rule 50(a) is not granted by the Court may renew its motion after trial. Fed R. Civ. P. 50(b). However, a party cannot raise arguments in its Rule 50(b) motion that it did not raise in its Rule 50(a) motion. *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003).

Post-verdict JMOL is appropriate where there is no "substantial evidence" to support the verdict. *Payao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). Substantial evidence is "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000). A court must consider the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in its favor, and not weigh the evidence or assess the credibility of the witnesses. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000); *see also Agrizap, Inc. v. Woodstream Corp.*, 520 F.3d 1337, 1342 (Fed. Cir. 2008).

   B.    **Discussion**

Plaintiff and Defendant each file Renewed Motions for JMOL. Plaintiff seeks JMOL that Defendant infringed claim 16 of the '245 Patent, or alternatively, a new trial thereupon. Defendant seeks JMOL that it did not infringe claim 4 of the '715 Patent. The Court addresses each Motion in turn.

   1.    *Plaintiff's Renewed Motion for JMOL of Infringement*

Plaintiff argues that it is entitled to JMOL that Defendant infringed claim 16 of the '245 Patent, or alternatively, a new trial thereupon. Specifically, Plaintiff argues that based on the testimony and evidence presented at trial, no reasonable jury could have found that Defendant did not infringe the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07556-RGK-SHK | Date | March 26, 2024 |
|---|---|---|---|
| Title | *GoTV Streaming, LLC v. Netflix, Inc.* | | |

claim. However, as Plaintiff concedes, the Court already considered and rejected these arguments in its order ruling on the parties' original Motions for JMOL. Plaintiff offers no argument that the Court should reconsider its previous ruling, instead explaining that it simply reasserts the arguments to preserve them for appeal. Accordingly, the Court **DENIES** Plaintiff's Motion.

    2.    <u>*Defendant's Renewed Motion for JMOL of Non-Infringement*</u>

Defendant argues that it is entitled to JMOL that it did not infringe claim 4 of the '715 Patent. Defendant argues that there was insufficient evidence presented at trial for a reasonable jury to find infringement of the claim. Specifically, Defendant argues that there was insufficient evidence with respect to four claim limitations: (1) use of a "wireless device"; (2) use of a "custom configuration [] associated with an application"; (3) "identification of a custom configuration of a plurality of rendering blocks"; and (4) transmission of "compiled content." ('715 Patent at 20:40–48.) Like Plaintiff's arguments, the Court already considered and rejected these arguments in its previous order. Defendant does not offer any argument for why the Court should reconsider its previous ruling. Accordingly, the Court **DENIES** Defendant's Motion.

Having confirmed that Defendant is liable for infringement of at least one of the claims, the Court next considers Plaintiff's Motion for New Trial on damages.

**III.**    <u>**PLAINTIFF'S MOTION FOR NEW TRIAL ON DAMAGES**</u>

    **A.**    <u>**Judicial Standard**</u>

After a jury trial, a court may grant a new trial to a party "for any reason for which a new trial has [] been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Because Rule 59 does not specify the grounds on which a court may grant a motion for a new trial, the court is "bound by those grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). Those grounds include, but are not limited to, claims that the verdict is against the great weight of the evidence, that the damages are excessive, that the trial was not fair to the moving party, that the jury instructions were erroneous or inadequate, or that the court made incorrect and prejudicial admissibility rulings. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940).

    **B.**    <u>**Discussion**</u>

Plaintiff argues that it is entitled to a new jury trial on damages because Defendant improperly presented several low-dollar patent licenses that were not technically comparable to the Asserted Claims, skewing the jury's damages award.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07556-RGK-SHK | Date | March 26, 2024 |
|---|---|---|---|
| Title | *GoTV Streaming, LLC v. Netflix, Inc.* | | |

    A patentee is entitled to a reasonable royalty for patent infringement. 35 U.S.C. § 284. A reasonable royalty is the amount of royalty payment that the patentee and the infringer would have agreed to in a hypothetical negotiation taking place just before the infringement first began. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). To determine a reasonable royalty, the finder of fact may consider several *Georgia-Pacific* factors. *See id.* at 1325 (citing *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970)). The second *Georgia-Pacific* factor is "[t]he rates paid by the licensee for the use of other patents comparable to the patent in suit." *Georgia-Pacific*, 318 F. Supp. at 1120. "Subsumed within this factor is the question of whether the licensor and licensee would have agreed to a lump-sum payment or instead to a running royalty based on ongoing sales or usage." *Lucent Techs.*, 580 F.3d at 1326. Thus, a party may proffer a license for two purposes: (1) to support a preference between a lump-sum payment and a running royalty; or (2) to establish the amount of the royalty. *See id.*; *Odyssey Wireless, Inc. v. Apple Inc.*, 2016 WL 7644790, at *5 (S.D. Cal. Sept. 14, 2016).

    "The party proffering a license bears the burden of establishing it is sufficiently comparable to support a proposed damages award." *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022) (citing *Lucent Techs.*, 580 F.3d at 1329). In doing so, the proponent "must account for differences in the technologies and economic circumstances of the contracting parties." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010). The degree of comparability required may vary depending on the purpose for which the party proffers the license. *See Odyssey Wireless*, 2016 WL 7644790, at *5 (denying motion to exclude purportedly non-comparable licenses, finding them "comparable for [the] specific purpose" of establishing the defendant's preference for lump-sum payments). When a party fails to provide any basis for the finder of fact to determine a license's comparability, courts will routinely exclude the license as inadmissible. *See, e.g., Adasa*, 55 F.4th at 914–15; *Laser Dynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79–91 (Fed. Cir. 2012). However, when a party provides some basis to find the license comparable, further disputes over the precise degree of comparability "go[] to the weight of the evidence, not its admissibility." *Ericcson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014).

    The introduction of inadmissible evidence that may taint the jury's damages award is grounds for a new trial on damages. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1319–21 (Fed. Cir. 2011) (affirming district court's grant of new trial on damages after plaintiff improperly referred to defendant's entire market value). Courts have ordered new trials on damages after the introduction of inadmissible, non-comparable licenses that might skew a damages award. *See Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 971–74 (Fed. Cir. 2022).

    At trial, Plaintiff argued that the jury should award $35 million as a one-year running royalty. Meanwhile, Defendant argued that the jury should award no more than $1.7 million as a lump-sum payment for the lifetime of the patent. Ultimately, the jury awarded $2.5 million as a lump-sum

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07556-RGK-SHK | Date | March 26, 2024 |
|---|---|---|---|
| Title | *GoTV Streaming, LLC v. Netflix, Inc.* | | |

payment. Plaintiff argues that Defendant improperly tainted this award by presenting several inadmissible, non-comparable licenses that suggested lower damages than the evidence supported. Specifically, Plaintiff challenges: (1) a demonstrative showing several non-comparable Netflix licenses; (2) Melissa Bennis's analysis of several Netflix and Phunware[1] licenses; and (3) a 2023 Phunware rate sheet. The Court addresses each in turn.

      1. *Demonstrative*

Prior to trial, Plaintiff filed a Motion in Limine seeking to exclude Ms. Bennis's opinions regarding several Netflix licenses. (Pl.'s Mot. in Limine No. 20, ECF No. 221.) Defendant opposed, explaining that although the licenses were "concededly[] not technically comparable," they may still be used to demonstrate Defendant's preference for lump-sum payments. (Def.'s Opp'n to Pl,'s Mot. in Limine No. 20 at 11–12, ECF No. 298.) The Court ultimately denied the Motion.

At trial, Plaintiff called its damages expert, Stephen Dell, to testify. During cross-examination, Defendant asked Mr. Dell about these non-comparable licenses. Defendant then requested to publish the demonstrative below, which lists these licenses and emphasizes that they were all lump-sum payments under $2 million.

**Netflix Patent Licenses: Lump-Sum Payments Under $2 Million**

| Netflix Patent License | Date | Price | Dell Report Citation |
|---|---|---|---|
| NCR Corporation | Jun. 21, 2006 | $975,000 | ¶¶ 108-112 |
| SBJ IP Holdings | Jun. 11, 2008 | $1,000,000 | ¶¶ 113-117 |
| Refined Recommendations Corp. | Sep. 15, 2008 | $62,500 | ¶¶ 118-122 |
| Webvention LLC | Dec. 28. 2009 | $80,000 | ¶¶ 123-126 |
| Quito Enterprises | Feb. 26, 2010 | $50,000 | ¶¶ 127-130 |
| Straight Path IP Group | Aug. 20, 2014 | $1,850,000 | ¶¶ 131-135 |
| Nagravision SA | Jan. 9, 2015 | $1,000,000 | ¶¶ 136-140 |
| Verdi Square | Jul. 17, 2015 | $10,000 | |
| Guada Technologies | May 9, 2017 | $10,000 | ¶¶ 141-144 |
| Moon Glow | Oct. 27, 2017 | $137,500 | |
| Hot Pepper | Nov. 19, 2020 | $10,000 | ¶¶ 145-149 |
| Sound View Innovations | Dec. 4, 2020 | $1,990,000 | ¶¶ 150-153 |
| R2 Solutions, LLC | Feb. 9, 2021 | $450,000 | ¶¶ 154-157 |

Exs. 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 1104

NETFLIX    DD7-1

---

[1] As explained in the Court's previous orders, Phunware was the previous owner of the '215 and '715 Patents. Prior to this lawsuit, Phunware assigned ownership of the patents to Plaintiff, but retained a license.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07556-RGK-SHK | Date | March 26, 2024 |
|---|---|---|---|
| Title | *GoTV Streaming, LLC v. Netflix, Inc.* | | |

(Pl.'s Renewed Mot. for JMOL at 6.) Plaintiff objected to this demonstrative under Federal Rules of Evidence 402 and 403, but the Court overruled. (Clark Decl., Ex. 4 at 153:21–154:1, ECF No. 439-6.) Defendant then proceeded to ask Mr. Dell to confirm that each of these licenses were for lump-sum payments under $2 million, before moving to admit the licenses themselves. (*Id.* at 154:7–22.) Plaintiff objected again under Rules 402 and 403, and the Court sustained, ordering that the demonstrative be taken down. (*Id.* at 154:24–155:10.) In all, Defendant elicited barely more than a page's worth of testimony about this demonstrative before it was taken down. (*Id.* at 154:2–155:9.)

Plaintiff argues that Defendant's use of this demonstrative justifies a new trial on damages. Specifically, Plaintiff argues that Defendant's focus on these incomparable dollar amounts misled and confused the jury, leading the jury to mistakenly award fewer damages than the evidence supported. The Court disagrees. There is little indication that this demonstrative had the effect that Plaintiff suggests. The demonstrative was displayed and discussed only briefly, in the middle of trial. It was not the focus of Defendant's damages rebuttal, nor was it discussed in closing, such that one would expect these figures to linger in the jury's mind and taint its verdict. *See Uniloc USA, Inc. v. Microsoft Corp.*, 640 F. Supp. 2d 150, 184–85 (D.R.I. 2009) (finding that plaintiff's improper comparisons to defendant's entire market value in its case-in-chief, cross-examination, and closing statements justified remittitur or new trial), *aff'd in part*, 632 F.3d at 1319–21. Indeed, the extent to which the jury relied on this demonstrative appears limited given that the jury awarded $2.5 million—more than the $2 million cap suggested by the demonstrative. Moreover, the range of licenses in the demonstrative are largely consistent with the "no more than $1.7 million" opinion set forth by Defendant's damages expert, Ms. Bennis, which as explained in further detail below, could be properly considered by the jury. The licenses in the demonstrative were merely cumulative of Defendant's other evidence. Thus, Defendant's use of the demonstrative does not warrant a new trial.

    2.    <u>*Netflix and Phunware Licenses*</u>

Prior to trial, Ms. Bennis prepared an expert report setting forth her opinions on damages. Ms. Bennis opined that based on several Netflix and Phunware licenses, damages should be awarded as a lump-sum of no more than $1.8 million. (Clark Decl. ISO Pl.'s Mots. in Limine, Ex. 14 at 17, ECF No. 222-14.) However, as a damages expert, she lacked the expertise to opine on the technical comparability of these licenses. Accordingly, she relied on Defendant's technical expert, Dr. Villasenor, who opined in his expert report that the licenses were technically comparable. (*Id.* at 40, 45, 48, 51.)

At trial, Defendant called Dr. Villasenor to testify. Defendant did not elicit any testimony about the licenses. Instead, Defendant focused his direct testimony on non-infringement. Defendant subsequently called Ms. Bennis to testify. Ms. Bennis testified that, based on her review of Dr. Villasenor's report and conversations with Dr. Villasenor, that several Netflix and Phunware licenses were technically comparable to the Asserted Claims in this matter, and consistent with the dollar

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07556-RGK-SHK | Date | March 26, 2024 |
|---|---|---|---|
| Title | *GoTV Streaming, LLC v. Netflix, Inc.* | | |

amounts of those licenses, the jury should award no more than $1.7 million[2] as a lump-sum. (10/19/23 AM Trial Tr. at 10:3–7, 17:16–18, 40:13–14, ECF No. 411.) Plaintiff did not object to this testimony.[3]

Plaintiff argues that Ms. Bennis's testimony relying on these licenses was improper because Defendant did not provide any evidence at trial establishing their technical comparability. This argument fails for one simple reason, however: Plaintiff never objected to her testimony. Plaintiff correctly points out that as a damages expert, Ms. Bennis could not rely on Dr. Villasenor's technical opinions unless those opinions were presented to the jury and subject to cross-examination. *See W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, 2015 WL 12731924, at *6 (D. Del. Nov. 4, 2015) (collecting cases). Ms. Bennis's opinions therefore could have been objected to for hearsay and lack of foundation. Yet, Plaintiff failed to make either objection, leaving the jury free to accept her assertion that the licenses were comparable and her ultimate opinion that the licenses supported a relatively low lump-sum award. *See* Fed. R. Evid. 103(a)(1)(A) (requiring a party to "timely" object to inadmissible evidence); *United States v. Mezzanatto*, 513 U.S. 196, 212 (1995) (Souter, J., dissenting) ("the Rules of Evidence [are] . . . waivable beyond any question."). Having failed to timely object at trial, Plaintiff cannot challenge admissibility in a post-trial motion. *Kelly v. City of Oakland*, 198 F.3d 779, 786 (9th Cir. 1999) (holding that a party could not challenge the admissibility of testimony for the first time in a Rule 50 motion); *Estate of Bynum v. Magno*, 55 Fed. Appx. 811, 813 (9th Cir. 2003) ("A party who fails to make a contemporaneous objection to the introduction of testimony at trial forfeits its right to contest the use of that evidence in a motion for judgment as a matter of law."). Thus, Ms. Bennis's analysis of these licenses does not warrant a new trial.

    3.     *2023 Phunware Rate Sheet*

Ms. Bennis also testified about a 2023 Phunware rate sheet. Ms. Bennis explained that Phunware's current pricing for services that practiced the Asserted Claims were consistent with her opinion that damages should be no more than $1.7 million. (10/19/23 AM Trial Tr. at 9:1–24, 26:22–27:10.) Ms. Bennis provided little, if any, explanation of the rate sheet. Instead, she summarily concluded that it was sufficiently analogous and comparable. Once again, Plaintiff did not object.

Plaintiff argues that Ms. Bennis's reliance on the rate sheet warrants a new trial because Defendant failed to establish: "(1) its reliability, (2) its relevance to a 2013 hypothetical negotiation

---

[2] Though her report stated that no more than $1.8 million was appropriate, she testified at trial that no more than $1.7 million was appropriate.

[3] Although Plaintiff objected to the introduction of certain licenses that Ms. Bennis discussed, Plaintiff did not object to her reliance on the licenses at issue, or her reliance on Dr. Villasenor's out-of-court opinions about comparability. (10/19/23 AM Trial Tr. at 23:13–22.) Plaintiff also filed a Motion in Limine ahead of trial seeking to exclude her opinions, arguing that Defendant had not sufficiently established comparability. (Pl.'s Mot. in Limine No. 20, ECF No. 221.) However, the Court denied the Motion because it appeared that Defendant could present enough evidence that any dispute over comparability went "to the weight of the evidence, not its admissibility." *Ericcson*, 773 F.3d at 1227.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07556-RGK-SHK | Date | March 26, 2024 |
|---|---|---|---|
| Title | *GoTV Streaming, LLC v. Netflix, Inc.* | | |

between the patent owner and Netflix, or (3) its technological and economic comparability." (Pl.'s Renewed Mot. for JMOL at 12.) However, these issues go to the admissibility of the rate sheet, to which Plaintiff did not object. Having failed to object, the jury was free to consider the rate sheet, just as it was free to consider the Netflix and Phunware licenses discussed above. Thus, the rate sheet does not warrant a new trial.

Because none of the evidence warrants a new trial on damages, the Court **DENIES** Plaintiff's Motion for New Trial. The Court next addresses Plaintiff's Motion for Attorneys' Fees.

### IV. PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

#### A. Judicial Standard

The Patent Infringement Act provides that reasonable attorneys' fees may be awarded to the prevailing party in "exceptional cases." 35 U.S.C. § 285. A case is "exceptional" if it stands out from others with respect to either: (1) the substantive strength of a party's litigating position; or (2) the unreasonable manner in which the case was litigated. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is exceptional in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* (internal quotations omitted). The court may also consider a non-exclusive list of factors in deciding whether a case is exceptional: "frivolousness, motivation, [and] objective unreasonableness." *Id.* at n. 6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19 (1994)). Either subjective bad faith or the pursuit of especially meritless claims may be sufficient to render a case "exceptional." *Id.* at 555. A party must establish its entitlement to attorneys' fees by a preponderance of the evidence. *Id.* at 557.

#### B. Discussion

Plaintiff, as the prevailing party, argues that the Court should find this case exceptional under 35 U.S.C. § 285, thereby allowing Plaintiff to seek attorneys' fees. Plaintiff argues that before trial, Defendant decided to abandon its invalidity defense. But rather than inform Plaintiff of this decision, allowing Plaintiff to focus its trial preparation and strategy on the real issues, Defendant feigned pursuit of the defense, forcing Plaintiff to waste resources that could have been better allocated elsewhere. Accordingly, Plaintiff requests that the Court award attorneys' fees associated with the invalidity defense incurred from September 11, 2023, the date Defendant filed its Pretrial Memoranda, through the end of trial on October 19, 2023.

Defendant disagrees, arguing that: (1) it went to trial fully intending to pursue its invalidity defense, but abandoned it at the eleventh hour as part of a reasonable trial strategy; and (2) even if Defendant had improperly abandoned the defense, that alone does not render this case exceptional. The Court addresses each of Defendant's argument in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07556-RGK-SHK | Date | March 26, 2024 |
|---|---|---|---|
| Title | *GoTV Streaming, LLC v. Netflix, Inc.* | | |

1.  *Abandonment*

Plaintiff argues that at some point prior to trial, Defendant decided to abandon its invalidity defense. But rather than inform Plaintiff of this decision, Defendant feigned pursuit of the defense to distract Plaintiff and waste its resources. In support of this theory, Plaintiff primarily relies on four pieces of evidence: (1) Defendant's disinterest in streamlining its invalidity defense; (2) Defendant's decision to spend little time on invalidity in its opening statement; (3) Defendant's exchange of incorrect, outdated invalidity slides; and (4) Defendant's inconsistent positions before this Court and the Patent Trial and Appeal Board ("PTAB"). Plaintiff argues that Defendant's conduct, when taken as a whole, demonstrates a pattern of behavior that can be explained only if Defendant secretly abandoned its defense intending to deceive Plaintiff. Accordingly, before assessing Defendant's true motives, the Court begins by summarizing the evidence.

**(1) Defendant's disinterest in streamlining its invalidity defense.** On October 6, 2023, Plaintiff asked defendant to stipulate that certain claim elements were uncontested to streamline its infringement claims. (McBride Decl., Ex. 6, ECF No. 432-8.) In exchange, Plaintiff offered to provide a comparable stipulation that certain claim elements were uncontested to streamline Defendant's invalidity defense. (*Id.*) On October 10, 2023, Defendant indicated that it was willing to stipulate but wanted a concession on the technical comparability of licenses it wanted to use to supports its damages rebuttal, rather than claim elements for invalidity. (McBride Decl., Ex. 7, ECF No. 432-9.)

**(2) Defendant's decision to spend little time on invalidity in its opening statement.** On October 16, 2023, the day before trial, Defendant sent Plaintiff demonstratives that it intended to use during its opening statement.[4] (McBride Decl., Ex. 5, ECF No. 432-7.) These demonstratives included five slides previewing some of Defendant's invalidity arguments. (*Id.* at 6–10.) On October 17, 2023, trial began and Defendant gave its opening statement. Defendant chose not to use any demonstratives during its opening statement, and consequently did not present the invalidity slides. Defendant did, however, briefly discuss invalidity. Defendant explained:

> [W]e, too, have a technical expert . . . his name is John Villasenor. . . . He's going to talk to you about how these patents are for a very specific technology and the history of the technology before the patents were filed. They can't say they invented something that was already out there. So I would love to go file a patent on Thomas Edison's light bulb, but I can't do that because he did it first. So Professor Villasenor is going to talk to you about that history and what was out there before these patents were filed.

---

[4] The parties stipulated to various trial procedures, including the exchange of demonstratives the night before they would be used at trial, so as to give the parties the opportunity to discuss and resolve any objections ahead of time. (Joint Stipulation Re: Trial Procedures ¶¶ 11–18, ECF No. 347.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07556-RGK-SHK | Date | March 26, 2024 |
|---|---|---|---|
| Title | *GoTV Streaming, LLC v. Netflix, Inc.* | | |

(10/17/23 PM Trial Tr. at 31–32.)[5]

**(3) Defendant's exchange of incorrect, outdated invalidity slides.** On October 15, 2023, Plaintiff informed Defendant that it was withdrawing several patent claims to focus solely on the Asserted Claims. (Dyer Decl. ISO Def.'s Mot. for JMOL, Ex. A, ECF No. 389-3.) These withdrawn claims included claim 1 of the '245 and '715 Patents. (*Id.*) On October 17, 2023, Defendant sent Plaintiff demonstratives it planned to use in its direct examination of Dr. Villasenor. (McBride Decl., Ex. 2, ECF No. 432-4.) These demonstratives included 43 slides related to Dr. Villasenor's opinion that claim 1 of both the '245 and '715 Patents were invalid, despite the fact that the claims were no longer at issue. (*Id.* at 29–71.) This mistake was confined only to the invalidity slides, however. Defendant's non-infringement slides each correctly identified the Asserted Claims as the only claims at issue. (*Id.* at 7–8.) The next day, Defendant did not elicit any testimony about Dr. Villasenor's invalidity opinions and did not use the invalidity slides.

**(4) Defendant's inconsistent positions before this Court and the PTAB.** Throughout the litigation, Defendant took the position that the Asserted Claims require an application that exists on a server rather than a client device, and that Defendant does not infringe because of this requirement. Defendant's technical expert, Dr. Villasenor, testified on this point, Defendant reiterated this point in its closing argument, and Defendant re-argued this point in its post-trial motions. (*See, e.g.*, McBride Decl., Ex. 9 at 209:12–16, ECF No. 432-11 ("The claim application . . . has to be executing on the server."); McBride Decl., Ex. 10 at 42:12–13, 46:10–17, ECF No. 432-12; Def.'s Mot. for JMOL at 6; Def.'s Renewed Mot. for JMOL at 6.) However, Defendant took a different position before the PTAB, arguing that the Asserted Claims were invalid over prior art because the application may exist on either a server or a client device. (McBride Decl., Ex. 11 at 36 n.10, ECF No. 432-13 ("POSITAs would have understood that the 'application' . . . could reside anywhere, for example on a client or on a server.").)

Plaintiff argues that Defendant's conduct points to only one logical conclusion: Defendant abandoned its invalidity defense before trial. If Defendant had abandoned the defense, it would have no interest in streamlining it, explaining why it rejected Plaintiff's October 6, 2023 proposal. It would further explain why Defendant chose not to use invalidity slides during its opening, and instead discussed invalidity just briefly, as Defendant did not want to waste its limited time on an abandoned defense beyond the minimum required to deceive Plaintiff. It would also explain why Defendant sent Plaintiff incorrect, outdated invalidity slides to be used with Dr. Villasenor. If Defendant had abandoned its defense before October 15, 2023, when Plaintiff informed Defendant that it was withdrawing several patent claims, Defendant would have had no reason to update its invalidity slides. To keep up the façade, Defendant recycled old invalidity slides prepared before October 15, 2023, not realizing that they were no longer applicable. And finally, the inconsistent positions before this Court and the PTAB proceedings

---

[5] No docket entry is associated with this transcript because, as of the date that this Order was issued, it does not appear that this transcript was filed on the docket.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07556-RGK-SHK | Date | March 26, 2024 |
|---|---|---|---|
| Title | *GoTV Streaming, LLC v. Netflix, Inc.* | | |

explain why Defendant might have abandoned its defense. Perhaps recognizing that its invalidity and non-infringement positions were incompatible and contradictory, Defendant chose to focus only on non-infringement here, so it could continue to pursue invalidity before the PTAB.

Defendant argues that there are innocuous explanations for its behavior. Defendant intended to present its invalidity defense until the last minute, when it made a strategic decision based on the evidence and themes that developed during trial. It decided to reject Plaintiff's offer to streamline its invalidity case not because it had abandoned the defense, but because it made a strategic decision that concessions on damages would be more useful. It decided not to present the invalidity slides during its opening statement because it decided that no slides of any kind were necessary. Though it concededly sent Plaintiff outdated invalidity slides later on, this was a reasonable mistake considering that Plaintiff had narrowed its infringement claims just two days prior, in the midst of intense trial preparation. And finally, contrary to Plaintiff's arguments, Defendant never argued that the Asserted Claims require an application that exists on a server. Instead, Defendant was simply summarizing Plaintiff's position without adopting it.

On balance, the Court finds that Plaintiff's explanation, that Defendant abandoned its defense ahead of trial, is more likely. To be sure, the Court does not find that Defendant's explanations are uncredible or that Plaintiff's theory is foolproof. Here, when asked to decide whether Defendant had a malicious intent, the Court is reminded of Hanlon's Razor: "Never attribute to malice that which is adequately explained by stupidity."[6] Had Plaintiff only identified one or two instances of suspicious conduct, the Court might be more inclined to accept Defendant's explanations of strategy and inadvertence. However, when faced with several instances of suspicious conduct, Defendant's explanations become more strained and complex. And in a case like this, the Court is reminded of yet another philosophical principle, Occam's Razor: "The simplest explanation is usually the best one." Given several instances of suspicious conduct, Plaintiff's explanation appears to be the simplest and most likely one. Accordingly, the Court concludes, by a preponderance of the evidence, that Defendant abandoned its invalidity defense but feigned otherwise intending to force Plaintiff to needlessly expend trial resources. The Court next considers whether this conduct renders the case exceptional.

2. *Exceptionality*

Plaintiff argues that Defendant's conduct renders the case exceptional because it was an unreasonable way to litigate the case. Defendant argues that the case is not exceptional because Plaintiff does not cite any cases where a court has found Defendant's conduct, by itself, sufficient to render a case exceptional. Defendant further argues that, even if its conduct could render the case exceptional, the Court should still find that the case is not exceptional under the totality of the circumstances because

---

[6] Of course, the Court does not mean to suggest that Defendant's actions, even those that it concedes were mistakes, were products of stupidity. However, the principle applies just the same.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07556-RGK-SHK | Date | March 26, 2024 |
|---|---|---|---|
| Title | *GoTV Streaming, LLC v. Netflix, Inc.* | | |

Plaintiff has not suffered prejudice and is guilty of committing similar conduct. The Court addresses each of Defendant's arguments in turn.

      a.    *Caselaw*

Plaintiff argues that the Court can find this case exceptional because courts have routinely found cases exceptional when a party employs tactics that force its opponent to "needlessly expend significant resources." *Taltech Ltd. v. Esquel Enters. Ltd.*, 609 F. Supp. 2d 1195, 1210 (W.D. Wash. 2009), *aff'd in part*, 604 F.3d 1324, 1334 (Fed. Cir. 2010); *see also, e.g., SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1332 (Fed. Cir. 2021) (affirming district court's determination that a case was exceptional because defendant employed several unreasonable litigation strategies "including maintaining nineteen invalidity theories until the eve of trial but ultimately presenting only two at trial"). Defendant argues that these cases are inapplicable because they involved multiple instances of unreasonable conduct, such as inequitable conduct during the prosecution of the asserted patents and the presentation of legally frivolous arguments. *Taltech*, 609 F. Supp. 2d at 1210–11; *SRI Int'l*, 14 F.4th at 1332. Defendant misses the mark. Neither of these cases suggest that a case is exceptional only if a party unreasonably litigates the case in multiple ways, or otherwise suggest that wasteful tactics are not enough. Accordingly, the Court finds that there is adequate legal support to find this case exceptional.

      b.    *Totality of the Circumstances*

Defendant alternatively argues that even if the Court can find this case exceptional under the caselaw, the Court should nonetheless decline to do so considering the totality of the circumstances. Specifically, Defendant argues that this case is not exceptional because Plaintiff has not suffered prejudice and is guilty of committing similar conduct. The Court agrees in part.

As to prejudice, Plaintiff argues that it was harmed because it wasted valuable time preparing to rebut a non-existent defense.[7] Defendant argues that this wasted time should be disregarded because Plaintiff previously argued in an opposition to a motion in limine that "more work" is not prejudicial. (Pl.'s Opp'n to Def.'s MIL No. 9 at 2, ECF No. 268.) However, Defendant misstates Plaintiff's position. Plaintiff argued that "more work" did not qualify as prejudice under Federal Rule of Evidence 403, which is concerned with material that would unduly influence a jury. (*Id.* (citing *Old Chief v. United States*, 519 U.S. 172, 180 (1997).) Plaintiff did not argue that more work is not prejudicial in other contexts, particularly when that extra work was due to unreasonable litigation tactics.

---

[7] Plaintiff also argues that it was forced to reserve extra time to rebut invalidity that could have been used to bolster its case-in-chief. However, it is unclear that this is the case, given that Plaintiff ran out of time during its cross-examination of Defendant's damages expert, calling into question whether Plaintiff would have had any time to allocate elsewhere. (*See* Dyer Decl. ISO Opp'n to Pl.'s Mot. for Attys' Fees, Ex. E at 52:18–19, ECF No. 438-6.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07556-RGK-SHK | Date | March 26, 2024 |
|---|---|---|---|
| Title | *GoTV Streaming, LLC v. Netflix, Inc.* | | |

As to similar conduct, Defendant argues that Plaintiff cannot complain about Defendant's failure to withdraw its invalidity defense because Plaintiff waited until the eleventh hour to withdraw several patent claims and failed to withdraw its doctrine of equivalents theory. Plaintiff argues that its conduct is readily distinguishable because unlike Defendant, Plaintiff successfully withdrew its claims before trial, and, despite never formally withdrawing its doctrine of equivalents theory, Plaintiff never exchanged slides mentioning the theory or discussed the theory during its opening statement. The Court agrees with Plaintiff that its conduct is distinguishable in this manner. And for this reason, the Court finds that Plaintiff's conduct does not make this case any less exceptional.

However, Plaintiff's conduct does inform the proper measure of attorneys' fees. Plaintiff argues that it is entitled to its invalidity-related fees from September 11, 2023, the date that Defendant filed its Pretrial Memoranda, to October 19, 2023, the last day of trial. The Court finds that a later start date is more appropriate: October 15, 2023, the date that Plaintiff formally withdrew its patent claims. When Plaintiff withdrew its claims on that date, Defendant presumably spent significant time and resources preparing to defend against those claims. Once those claims were dismissed, all that work was for naught. Whether Plaintiff withdrew on that date maliciously or in good faith, it is only fair that both parties shoulder their own fees prior to that date. Thus, the Court finds that the appropriate start date for attorneys' fees is October 15, 2023, the same day that Plaintiff withdrew its patent claims.

Accordingly, the Court **GRANTS** Plaintiff's Motion for Attorneys' Fees. The Court finds that Defendant's unreasonable litigation tactics render this case was exceptional, thereby supporting an award of attorneys' fees related to invalidity from October 15, 2023 to October 19, 2023. Plaintiff may file a separate motion setting forth the requested amount and reasonableness of their request **within fourteen (14) days of this Order's issuance**.

### V.     CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Renewed Motion for JMOL and Plaintiff's Renewed Motion for JMOL and New Trial. The Court **GRANTS** Plaintiff's Motion for Attorneys' Fees. Plaintiff may seek attorneys' fees related to invalidity from October 15, 2023 to October 19, 2023 by filing a separate motion **within fourteen (14) days of this Order's issuance.**

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | JRE/sf |